Drake v. Barton.

ELIAS F. DRAKE

*vs.*

THOMAS BARTON.

The rule, that an objection that the complaint does not state facts suffi-
cient to constitute a cause of action, when made for the first time in this
court, on appeal from the judgment of the district court, will not be sus-
tained if the facts material to support the judgment are fairly inferable,
by any reasonable intendment, from what is alleged in the complaint,
applied in this case to a complaint which stated, that B. authorized H. to
sell the premises in question, on certain terms, or such modifications
thereof as B. should thereafter accept; that on June 1, 1870, H., in pur-
suance of such authority, effected a sale to D. upon terms set out and
which were a modification of those specified in the authority given him.
*Held*, that as H. could not have *effected* a sale, upon such modified terms,
without B.'s approval, and as his approval, though given after June 1,
would have made it his contract on June 1, the positive allegation of the
complaint, that H. effected such sale, on June 1, necessarily involves the
fact of B.'s approval, and the complaint is sufficient to support the judg-
ment for specific performance of said contract appealed from.

Said contract provided, that " half the price to be paid when deed with
good title is ready, and the balance in equal payments in one and two
years with interest annually. Interest to commence when possession is
given, and that to be by the first of September next." *Held*, that the
balance was to be paid in one and two years from the time of payment of
the cash part of said price, viz.: the delivery of the deed; and that if B.
did not yield possession until after September 1, interest on the deferred
payments did not commence till possession given.

Said judgment required B. to convey said premises to D. by a good and
sufficient warranty deed with full covenants such and so as to vest in said
D., a good, sure, perfect and indefeasible estate in fee simple thereto,
and in default of compliance, the decree to be a lien on the premises till

compliance, and until the further order of the court. *Held*, that if B.'s agreement had been merely to sell, without saying anything about title, he would have been bound to give a deed with the usual covenants; that the stipulation for a deed with good title, discloses no intention that the deed shall not contain the usual covenants; and that in this state a deed with the usual covenants, would be considered to include what is understood by "a warranty deed with full covenants." *Held*, also, that said judgment is not objectionable as requiring an impossibility (i. e. to make a good title), as if B. should have a wife, who would not sign the deed. If such were the fact, and D. refused to take B.'s warranty, it would be competent for the court to require B. to convey his own title, with compensation to D. in respect of the wife's claim of dower, or make such other decree in respect thereof as would do justice between the parties, and the judgment reserves this power to the court.

Action in the court of common pleas, for Ramsey county, to compel the specific performance of a contract for the purchase and sale of certain real estate. The cause was tried before the court without a jury, and a judgment or decree rendered therein, in favor of the plaintiff. The defendant appeals therefrom to this court. The case is sufficiently stated in the opinion.

GEORGE L. OTIS, for Appellant.

BRISBIN & PALMER, for Respondent.

*By the Court.*—RIPLEY, CH. J.—The substance of the power given by Barton to Hewitt (so far as is here material) is, that the former affirming himself to own the property in question authorized the latter to sell it upon these terms, (or such modification thereof as he should accept,) viz.: for 8,000 dollars, one half down, balance in one and two years at interest.

Upon a sale of real property the purchaser, if the contract is silent on the subject, is entitled to possession, and the vendor to interest on the purchase money. That the agreement

made by Hewitt with Drake was not within the strict terms of the power in, at least, one material point is very evident. Supposing it to be competent for him to stipulate that until Drake took possession interest should not commence on the deferred payments, he would, nevertheless, have had no authority to stipulate that while Barton retained possession Drake should be entitled to the use of any part of the premises. If being out of possession was by implication of law to exempt Drake from paying interest, Barton would certainly be in law entitled to the use of the whole land.

It is, however, we think, quite evident from the findings of fact that Barton ratified the contract. Hewitt was, in the first instance, authorized to make (in effect) any bargain that Barton should ratify. Being ratified it stood, of course, as if Barton had made it himself on the first day of June, 1870. This being so, the appellant, nevertheless, contends that the complaint does not state facts sufficient to constitute a cause of action.

This point appears not to have been raised in the court below. Such objection when made for the first time in this court on appeal from a judgment, will not be sustained, if the facts material to support the judgment are fairly inferable, by any reasonable intendment, from what is alleged in the complaint. *Smith vs. Dennett,* 15 *Minn.* 81.

The judgment recites, that Barton duly contracted to sell, and did sell, to Drake the property mentioned, on the terms in the complaint stated, and, therefore, that Drake is entitled to a specific performance of the contract of sale, and adjudges accordingly. The material fact to support such judgment is, of course, that Barton did so sell. Turning to the complaint, we find that it recites the written authority, viz.: to sell on the terms specified, or such modifications thereof as Barton should thereafter accept, and alleges that on the 1st June, 1870,

Drake v. Barton.

thereafter, Hewitt in pursuance of such authority *effected a sale* of said property to plaintiff. upon the terms set out in the written contract.

Now as a sale requires the assent of both parties, and as the terms of the contract were modified from those of the power, it follows that Hewitt could not have *effected a sale* on the terms of the contract, unless Barton *accepted* those terms. But if he accepted them, though after June 1st, 1870, it would be his contract of that date.

There is, then, a positive allegation that on June 1st, a sale was effected pursuant to a power to sell on certain terms, or such modification thereof as Barton might accept, the terms of which sale appear to be modified from those of the power. If, then, Hewitt did so effect such sale, " the only reason (in the language of *Smith vs. Dennett* above cited) that can be given" why he did, is that Barton accepted the modification, which, by the way, the power itself contemplates that Hewitt may find it necessary to make in any successful negotiation, and therefore authorizes, subject to Barton's approval. Without such approval Hewitt could not have *effected a sale*, and " the conclusion is irresistible" that if he did effect it, (and the complaint states positively that he did,) it was because of such approval. We are, therefore, of opinion that it is fairly to be inferred from the complaint that Barton accepted the sale made by Hewitt for him, and that the complaint is, therefore, sufficient to support the judgment.

We are confirmed in this opinion by the circumstance that defendant, instead of demurring to the complaint, alleges that Hewitt was not authorized to make such modifications, and that the defendant never approved of or ratified them ; from which the natural conclusion is that the pleader understood the complaint in the sense above stated.

Being of opinion, as above stated, that the contract is Bar-

ton's contract, and the plaintiff having been always ready and willing and able to carry it out on his part, while the defendant refuses, after demand, to perform it, it follows that the former is entitled to specific performance.

Certain objections are made by the defendant, however, to the terms of the judgment therefor entered in the court below. It is said, in the first place, that the defendant is entitled to interest on the deferred payments from September 1st, pursuant to the terms of the contract, according to which, however, this is to commence " when possession is given, and that to be by September 1st." It is Barton's own fault that he did not give possession at that date, and thus entitle himself to interest thereafter. Secondly it is urged, that the time fixed in the judgment for the payment of the deferred installments is erroneous; that it should run from June 1st, 1870. The answer is, that by the terms of the contract half of the price is to be paid "when deed with good title is ready, and the balance in equal payments in one and two years." This evidently means that the balance is to be paid in one and two years from the date of payment of the cash part of the price, viz.: the delivery of the deed. The deed and mortgage were to be contemporaneous.

The next objection is, that the judgment requires an impossibility, viz.: to make a perfect title to the land; because, as it is said, Barton has a wife who will not sign the deed. No such fact, however, appears in the case. Suppose, however, that it is so; then the argument is, that the warranty deed in the judgment mentioned is not a perfect title, and the plaintiff might and certainly would refuse it; yet the judgment provides that it (the judgment,) shall be and remain a lien upon the said premises till defendant shall make such perfect title; thus it is said, compliance being impossible, the land is tied up and rendered comparatively valueless without defendant's

Drake v. Barton.

fault, and this, it is said, is a hardship which a court of equity will not impose on him.

It is to be remembered, however, that the defendant affirms his ownership of the property in the authority which he gave Hewitt to sell it, and that the contract of sale itself stipulates for a deed with good title.

Now if this contract had said nothing whatever about the title ; if it had been simply an agreement to sell on the part of defendant, and on the part of the plaintiff to buy, the premises in question, no doubt it would have bound the defendant to make a good title. In every contract for the sale of land, unless the contrary intention is expressed, there is an implied undertaking on the part of the vendor, while the contract remains executory, to make out a good title, clear of all defects and incumbrances. *Dwight vs. Cutler*, 3 *Mich.* 575, *and cases cited* ; *See also Shuck vs. Pierce*, 3 *Iowa*, 350 ; *Wright vs. Young*, 6 *Wis.* 127.

As to any imperfection within the power of the defendant to remove, should any such appear, it would of course be no hardship to require him to remove it. And whether or not a court of equity would require him to make a good title, it appearing that he had a wife who refused to sign the deed, [2 *Story's Eq.* § 731 *to* 735] yet, supposing such a state of facts to exist, the judgment does not involve the hardship supposed. It would be perfectly competent for the court to decree the defendant to convey his own title, with compensation to plaintiff for the incumbrance—viz.: such inchoate right of dower —(*Wright vs. Young, supra,*) or make such other decree in respect of such incumbrance as would do justice between the parties. 3 *Lea. Ca. in Eq.*, 3d *Am. Ed. p.* 90 ; *Young vs. Paul*, 2 *Stock. N. J.* 414. If, in the case supposed, the plaintiff, considering such warranty deed a sufficient indemnity or security against such dower, should see fit to accept it, there

would be an end of the difficulty. If he did not, the judgment by its terms is to be a lien till the defendant complies with its terms, *and until the further order of the court.* It was not, therefore, a final judgment.

As we have seen, the court below could not *assume*, against the vendor's own express contract to the contrary, that it was not in his power to make a good title, nor go upon the supposition, in the absence of evidence to that effect, that he had a wife who would not sign the deed. It could do no less, therefore, than to adjudge him to do what he had agreed to do, and in case of default, to secure the purchaser's rights till the defendant complied with the judgment.

The supposition in the absence of proof to the contrary would be, that defendant if he had a wife had obtained her consent before he bound himself to give a perfect title: 2 *Story's Eq.* § 732.

If he had not, or if after judgment she went back from her word, and plaintiff refused to accept the deed without her signature, this judgment is so framed as to permit the defendant to move for such modification of it as may be according to equity.

It is not to be modified or reversed by this court, upon the two-fold assumption first necessarily to be made that defendant has a wife who will not sign the deed, and that the court below, upon such fact, and the further assumed fact that plaintiff will not accept the deed without her signature, being shown, will not do equity between the parties.

Finally it is objected that as Barton's contract calls " for deed with good title," the vendee thereunder can claim neither warranty nor covenants. It is perhaps sufficient to say, that if Barton has a perfect title as he has represented, and as for aught that appears in the case he has, this, if this be techni-

Drake v. Barton.

cally an objection, is an immaterial one, for the covenants cannot harm him.

The cases from early New York Reports, upon which appellant relies, however, " do not," as has been truly said, " conform to the current of decisions in other states, and can hardly be considered to express the existing rule of law in that state." 2 *Hilliard on Vendors*, ch. 28, secs. 8 and 9, note a, p. 46.

We think the case of *Dwight vs. Cutler* before cited, is correct in saying, that in every contract for the sale of lands, the vendor, unless he acts in a mere ministerial or fiduciary capacity, or there is something in the terms of the contract or attendant circumstances which shows a contrary intention, engages not merely to give a good title, but also to convey by a deed containing the usual covenants.

If this agreement, therefore, had been merely to sell, without saying anything about title, Barton would have been bound to give a deed with the usual covenants. Certainly the stipulation, that the purchase money is to be payable when " deed is ready with good title," discloses no intention that the deed shall not contain the usual covenants. As to what would be considered the usual covenants here, we should say in the words of the case above mentioned, and for the same reasons there given, "no doubt it is the general usage in this state, and probably in most of the Western states, to convey lands by deeds containing the covenants of general warranty, upon the principle that an agreement to convey, where there is nothing to show a contrary intention, gives a right to the usual covenants for title."

With respect to this state, we think we are justified in adding that a deed with " the usual covenants for title," would be considered to include what is understood by " a warranty deed with full covenants," as in the judgment in question it is expressed. Judgment affirmed.