PRUDENTIAL INSURANCE COMPANY OF AMERICA *v.* SOUTH.

654

No. 10010.   November 14, 1934.

*Spalding, MacDougald & Sibley, Estes Doremus,* and *P. F. Brock,* for plaintiff in error.

*T. J. Lewis* and *Hewlett & Dennis,* contra.

Bell, J. Certiorari was granted in this case, to review the following decision and judgment of the Court of Appeals: "The plaintiff was employed by a railroad terminal company as a switchman. It took an able-bodied man with two feet and two hands to perform this work. Plaintiff was insured by the defendant insurance company against death and accident. He met with an accident which necessitated the amputation of his arm just below his shoulder. The policy provided that total disability, within the meaning of the policy, existed whenever the insured was 'rendered wholly, continuously, and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his life.' The plaintiff was unable to continue as a switchman, on account of such injury, railroad and terminal companies not employing one-armed men in such capacity. He filed a claim with the insurance company, and it refused to pay the same and denied liability, on the ground that the insured was not totally disabled within the meaning of the above clause in the policy. He filed suit against the insurance company. On the trial the foregoing facts appeared. There was also evidence to the effect that the plaintiff had not earned any money since his injury and was unable to perform any substantial work; and that while he lived on the farm with his father, he was not able to do any farm work on account of such injury. Upon the conclusion of the plaintiff's evidence, the court granted a nonsuit, and to this judgment plaintiff excepts. *Held,* that this case is controlled by the rulings of the Supreme Court in *Cato* v. *Ætna Life Ins. Co.,* 164 *Ga.* 392 (138 S. E. 787), and of this court in

*Marchant* v. *New York Life Ins. Co.*, 42 *Ga. App.* 11 (155 S. E. 221), and *New York Life Ins. Co.* v. *Thompson*, 45 *Ga. App.* 638 (165 S. E. 847). The plaintiff made out a case showing that he was totally disabled, within the meaning of that term as construed by the above decisions, and his case should have been submitted to the jury." *South* v. *Prudential Ins. Co.*, 47 *Ga. App.* 590 (171 S. E. 215).

It is contended, among other things, that the Court of Appeals ignored that portion of the disability clause to the effect that the insured must be unable to "perform any work for any kind of compensation of financial value during the remainder of his (or her) lifetime." All contentions made, except one, relate to the meaning and effect of this clause. In cases of this character, the policy should be construed liberally to effectuate the general purpose of the contract, which is to indemnify the insured for the loss of time by reason of incapacity to perform his usual work or carry on his usual business by reason of a happening covered by the policy. Cole *v.* Metropolitan Life Ins. Co., R. I. (170 Atl. 74). The policy here contained language different from that involved in *Cato* v. *Ætna Life Ins. Co.*, 164 *Ga.* 392 (138 S. E. 787), and the other cases cited by the Court of Appeals; but the purpose of the contract was substantially the same, and the case should be governed by like principles. There are two lines of authority relating to cases of this kind, one tending to literalism, and the other applying the principle of liberal construction. The authorities which incline to strict interpretation are seemingly in the minority, and this court is committed to the more liberal doctrine. *Cato* v. *Ætna Life Ins. Co.*, supra; *New York Life Ins. Co.* v. *Thompson*, 177 *Ga.* 898 (172 S. E. 3). The two lines of authority were recognized in Hurley *v.* Bankers Life Ins. Co., 198 Iowa, 1129 (199 N. W. 343, 37 A. L. R. 146), a case in which the court did not apply the more liberal doctrine, but intimated that except for its own prior decision in Lyon *v.* Railway Passenger Co., 46 Iowa, 631, it might be persuaded to do so. See reference to these cases in *Marchant* v. *N. Y. Life Ins. Co.*, supra. The Hurley case was distinguished and apparently relaxed in the later decision of Kurth *v.* Continental Life Ins. Co., 211 Iowa, 736 (234 N. W. 201).

The words "occupation" and "work" must each be construed according to the facts and circumstances of the execution of the

contract, including the objects to be effectuated thereby. The insured was at the time employed as a switchman, and the company must have known of this fact. It received a valuable consideration for which it agreed to confer a benefit, and it is presumed that a substantial benefit was intended. If a literal construction is applied in this case, the insured would be required to show a condition of practical helplessness in order to recover. Few people ever arrive absolutely at that condition from a non-fatal accident. The term "work" is itself ambiguous, having numerous definitions, including (1) mental or physical effort directed to an end; (2) toil or labor; and (3) employment or occupation. Where a provision in a policy is susceptible of two or more constructions, the courts will adopt that construction which is most favorable to the insured. *Massachusetts Benefit Life Asso.* v. *Robinson,* 104 *Ga.* 256(2) (30 S. E. 918, 42 L. R. A. 261). Under this policy, any reasonable person would have expected substantial protection, and would never have thought of the disability as one which must incapacitate him to earn the smallest sum in any possible manner. We do not think it material in this case that the wording of the contract may be somewhat different from the language dealt with in the several cases cited by the Court of Appeals. Total disability, irrespective of the technical variations in the language employed, should be given a rational and practical construction. The phrase is a relative term, depending upon the circumstances and peculiar facts of each particular case, and is usually a question of fact to be determined by the court or jury trying the case. American Liability Co. *v.* Bowman, 65 Ind. App. 109 (114 N. E. 992). The policy in the present case further provided, that, "without prejudice to any other cause of disability, the company will recognize the entire and irrecoverable loss of the sight of both eyes, or of the use of both hands, or of both feet, or of one hand and one foot, as total and permanent disability under this policy." Some of these specific conditions might not render the insured literally unable to "perform any work for any kind of compensation of financial value during the remainder of his lifetime." Thus, the company did not go so far in its own particular definition of total disability as it would ask the courts to go in applying the general definition as contained in the same contract. Cf. Kurth *v.* Continental Life Ins. Co., supra.

"Occupation" and "work" may not mean the same thing, and it appears from the context that they were not intended to be used interchangeably in the instant policy. But it does not follow that the latter term shall be accepted in the sense of any sort of labor, however insignificant or irregular. The word "occupation" is a more elevated term, signifying a trade or calling; but each may include the idea of continuity and imply regularity in a specific line of endeavor. The term "work" being ambiguous and susceptible of various meanings, it should, on a proper construction of this contract, be defined as an employment having some degree of permanency, though not amounting to an occupation. This is true even if we look to the contract alone, without reference to the extraneous circumstances, which should also be considered. In Foglesong v. Modern Brotherhood, 121 Mo. App. 548 (97 S. W. 240), the policy provided for indemnity in case of "permanent and total disability of said member, which renders him unable to carry on or conduct any vocation or calling." The court declined to construe this provision as meaning that no recovery could be had if the insured was able to carry on any vocation whatever, saying: "We are unwilling to adopt such a doctrine, the effect of which would be, practically, to reduce all such contracts to nullities and to make them the instruments of extracting dues from policyholders, without creating any liability on the part of the insurers. Common knowledge of the occupations in the lives of men and women teach us that there is scarcely any kind of disability that prevents them from following some vocation or other, except in cases of complete mental inertia. We have examples of persons without hearing, and without sight, following a vocation; some without feet, and some without hands, engaged in business. The achievements of disabled persons are seemingly marvelous. Under defendant's theory, the plaintiff might embark in the peanut trade, or follow the business of selling shoestrings or lead pencils, or follow some similar calling, in which instances, under the rule invoked, there would be no disablity within the meaning of the policy. In our opinion, such was not within the contemplation of the parties. In order to carry out the intent of the parties, it is our duty to disregard the broad language used, which would have the effect to defeat the purpose of the contract and render it a nullity." In Marchant v. New York Life Ins. Co., supra, the Court of Appeals saw fit to distinguish its earlier deci-

sions in *Whitton* v. *American Ins. Co.*, 17 *Ga. App.* 525 (87 S. E. 827), and *Parten* v. *Jefferson Standard Ins. Co.*, 30 *Ga. App.* 245 (117 S. E. 772). The earlier cases were in some degree different; but, in any view, these cases do not persuade us to a different conclusion in the present case.

This being a group policy covering employees of a railroad company, the insurer necessarily knew that the plaintiff was a railroad employee; and, as indicated above, it presumably knew that his own particular work was that of a switchman. From common knowledge it may also be inferred that the premium rates were based upon the risk assumed. The language of the disability clause shows that it was an abstract or blanket form designed to apply to any person who might take a policy containing such form. We refer to the expressions, "if any person insured under this policy," "he (or she)," and "his (or her)." But, just as the feminine pronouns became inapplicable on the issuance of the policy to Mr. South, so did the other words lose their broad expanse and generality when the *form* became a contract between these parties. The expressions "any occupation" and "any work" were thus converted into words of concrete signification, and should be construed to mean the ordinary employment of the particular person insured, or such other employment, if any, approximating the same livelihood, as the insured might fairly be expected to follow, in view of his station, circumstances, and physical and mental capabilities. Wall *v.* Continental Casualty Co., 111 Mo. App. 504 (86 S. W. 491); Industrial Indemnity Co. *v.* Hawkins, 94 Ark. 417 (127 S. W. 457, 29 L. R. A. (N. S.) 635, 21 Ann. Cas. 1029); Hutchinson *v.* Supreme Tent, 68 Hun, 355, 22 N. Y. Supp. 80; Keith *v.* Chicago &c. R. Co., 82 Neb. 12 (116 N. W. 957, 23 L. R. A. (N. S.) 352, 130 Am. St. R. 655); Metropolitan Ins. Co. *v.* Bovello, 12 Fed. (2d) 810 (51 A. L. R. 1040); Cody *v.* John Hancock Ins. Co., 111 W. Va. 518 (163 S. E. 4, 86 A. L. R. 354). If the insured is so incapacitated that substantially all of the material activities of any such employment are reasonably closed to him, he is totally disabled within the meaning of the policy. The insured would, of course, not be entitled to a recovery merely upon proof that he had lost his right arm; but he may submit evidence that in the particular circumstances applicable to himself the injury rendered him totally and permanently disabled within the meaning of the policy. In the

instant case it can not be held as a matter of law that the evidence was insufficient for this purpose.

In the argument counsel for the insurer disclaimed any intention to construe the policy so as to bring about the absurd results referred to in the Fogelsong case, supra. Then, where is the line to be drawn? It would seem that the only other sufficiently definite standard would be to apply the reasonable construction which is most favorable to the insured, considering the policy as a whole and viewing it fairly in the light of all the facts and circumstances and the purpose to be accomplished thereby. *Johnson* v. *Mutual Life Ins. Co.*, 154 *Ga.* 653 (115 S. E. 14). It appears from the record that the company paid the insured $500 on account of the loss of his arm, and it is contended that this payment was a discharge of all liability under the terms of the policy contract. This can not be true, for the reason that the policy expressly stipulated that for described injuries the company would pay stated sums, including $500 for the loss of "one hand or one foot," *in addition to any other disability benefit* provided by the policy. Under the evidence, the plaintiff's case should have been submitted to the jury, and the Court of Appeals properly so held. Notwithstanding our great respect of the court which decided the case of Metropolitan Life Ins. Co. *v.* Foster, 67 Fed. (2d) 264, we can not agree with all that is said in that decision. Compare the Kurth case, supra; and see generally Equitable Life *v.* Branham, 250 Ky. 472 (63 S. W. (2d) 498) ; Plummer *v.* Metropolitan Life Ins. Co., 132 Me. 220 (169 Atl. 302) ; Wilson *v.* Metropolitan Ins. Co., 18 Minn. 462 (245 N. W. 820) ; Hamblin *v.* Equitable Life Assur. Soc., 124 Neb. 841 (248 N. W. 397) ; Taylor *v.* Southern States Life Ins. Co., 106 S. C. 356 (91 S. E. 326, L. R. A. 1917C, 910) ; Pacific Mutual Life Ins. Co. *v.* McCrary, 161 Tenn. 389 (32 S. W. (2d) 1052) ; Pilot Co. *v.* Owen, 31 Fed. (2d) 862; Marshall *v.* Kansas City Life Ins. Co., 171 S. C. 321 (172 S. E. 504).

In Austell *v.* Volunteer State Life Ins. Co., 170 S. C. 439 (170 S. E. 776), it was held that a policy providing for indemnity in the event the insured became physically and "incurably disabled," meant incurably disabled so far as can be determined by human testimony and human knowledge. In the present case it is certain that the insured can never regain his arm ; but if he should at any time after his injury so readjust himself to his handicap by educa-

tion or otherwise, or find himself, from any circumstances, reasonably able to pursue his ordinary work or any work of like productivity, his alleged total and permanent disability would no longer exist, within the meaning of this policy, these terms being relative and the condition thereby described being subject to change by circumstances. Cf. *Federal Life Ins. Co.* v. *Hurst,* 43 *Ga. App.* 840 (4), 848 (160 S. E. 533). The policy here provided for monthly payments for the period of twenty-four months only; but it is yet proper in this decision to define the policy, with its necessary conditions and implications, as though payments were not so limited.

It is unnecessary to deal separately with each assignment of error contained in the petition for certiorari. All of them are controlled adversely to the plaintiff in certiorari by the principles stated in the foregoing discussion.

*Judgment affirmed. All the Justices concur, except Gilbert, J., who dissents.*

ATKINSON, J., concurs in the result.

GILBERT, J., dissenting. There are some principles applicable to this case which have been settled in this and in other States. In *Cato* v. *Ætna Life Ins. Co.,* 164 *Ga.* 397 (supra), it was said: "Policies of insurance will be liberally construed in favor of the object to be accomplished, and the provisions therein will be strictly construed against the insurer. . . But the contract of insurance should be construed so as to carry out the true intention of the parties. . . The rights of the parties are to be determined by the terms of the policy, so far as they are lawful. The language of the contract should be construed as a whole, and should receive a reasonable construction, not be extended beyond what is fairly within the terms of the policy. Where the language is unambiguous and but one reasonable construction of the contract is possible, the court must expound it as made." These principles are not now questioned. Attention should be directed to the fact that under the rulings above stated the contract of insurance must be construed so as to carry out the intention of both parties, not merely the intention of one party. Again, the rights of the parties are to be determined by the terms of the policy. Both parties have legal rights and must stand equally before the court. Contracts of insurance are construed like other contracts. I can not agree

that it is immaterial that the language of this policy is "somewhat different from the language" dealt with in other decisions. This court is constantly concerned with and drawing many distinctions between facts upon which cases cited as authority are based. It has often been said that no case is broader than the facts, and that rulings going beyond the facts of the case are obiter and not binding authority. Strict construction is not always to be abhorred; it is often necessary and to be jealously applied.

The provisions of this policy differ materially from those previously before this court, and it is not unreasonable to conjecture that the language was adopted to clarify the meaning of other policies where this court had adopted a construction the correctness of which was stoutly contested. Perhaps the leading case depended upon by the majority is *Cato* v. *Ætna Life Insurance Co.*, supra. I shall not discuss other cases cited. The language used in the two policies are shown in parallel columns:

Cato case.

"If total disability of any employee entitled to insurance under the schedule of insurance contained in this policy begins before the age of sixty, and if due proof be furnished the company after such disability has existed for a period of six months, and if such disability presumably will, during lifetime, prevent such employee from pursuing any occupation for wages or profit, such employee shall be deemed to be totally and permanently disabled within the meaning of the policy."

Language in the instant case.

"If any person insured under this policy shall become totally and permanently disabled either physically or mentally from any cause whatsoever to such an extent that he (or she) *is rendered wholly, continuously, and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his (or her) lifetime.*" (Italics mine).

Thus it will be seen that the policy in *Cato* case did not contain the following compelling language, which is contained in the policy in the instant case: "is rendered wholly, continuously, and permanently unable to engage in *any occupation or perform any work for any kind of compensation of financial value during the remainder of his (or her) lifetime.*" (Italics mine.) How can the court discard the language last quoted, not found in the *Cato* policy? The rulings made in the *Cato* case are not applicable. According to the plain terms of the policy, which is the contract entered into by the parties, the assured is not entitled to recover; and the award of a nonsuit by the trial court, in my opinion, was proper.