24182. NEW YORK LIFE INSURANCE COMPANY *v.* THOMPSON.

DECIDED JANUARY 19, 1935.

*Ernest M. Davis, Lawton & Cunningham,* for plaintiff in error.
*P. M. Anderson, Bruce D. Dubberly,* contra.

GUERRY, J. The real question before this court in the present case might be substantially stated as follows: Did the evidence introduced at the trial authorize a finding by the jury that the insured, by reason of his injury, was totally and permanently disabled, within the terms of the policy? The policy, in this connection, provided that "disability shall be deemed to be total whenever the insured becomes wholly disabled by bodily injury or disease so that he is prevented thereby from engaging in any occupation whatsoever for remuneration or profit."

The evidence disclosed that the defendant company, in October, 1923, issued a life and accident insurance policy to the plaintiff, who was at that time 14 years of age. As one of the benefits under the policy, it was provided that "The company agrees to pay to the insured disability benefits one per cent. of the face of this policy ($10 per $1000) each month during the lifetime of the insured and also to waive the payment of premiums, if the insured becomes wholly and permanently disabled before age 60, subject to all the terms and conditions contained in section 1 hereof." The pertinent part of section 1 referred to in this provision is that provision which is quoted above. In the application for this insurance policy, the insured gave as his then "present occupation" that of "farming and going to school." During the month of January, 1924, the insured contracted a disease which resulted in the amputation of his leg in April, 1924. The defendant paid the plaintiff at that time 6 monthly installments amounting to $60 up until September 1, 1924, and then refused any further payments. A suit was filed in behalf of plaintiff in November, 1925, for 15 installments of $10 each, and a default judgment was rendered thereon for the amount sued for on March 9, 1926. This petition, verdict, and judgment were filed as a part of the pleadings in the present case. To the present petition the defendant filed certain demurrers which were overruled by the trial court, and this judgment was affirmed by this court in *New York Life Ins. Co.* v. *Thompson,* 45 *Ga. App.* 638 (165 S. E. 847). The present suit is brought to recover payments from December 1, 1925.

The plaintiff swore that at the time of the issuance of the policy he was staying with his father, working around the farm, baling hay and plowing, etc., but was not getting paid for his work other than his upkeep; that his father gave him a patch of cotton or some-

thing like that which kept him going. "I made a pretty good living out of it. What I didn't make he supported me, and in the fall I would always get it and have it for my own." He testified that he expected to make farming his life work. He further testified: that he was now in the same condition as he was when the first suit was filed and judgment had. "My condition is just as bad now as it was when the suit was filed, and I feel a little bit worse. . . I have not physically been able to do any work since the suit was filed." He testified that his inability to get work was "more because I have not been able to get a job than because I have not been able to work if I could find one. If I could have found something that I could have sat down and done, I could have done work if I had the education." Plaintiff attended school from September, 1924, until he graduated from high school in May, 1929. The evidence further disclosed that the plaintiff had not been able to procure any job that he could perform, although he had tried several petty jobs. He was a candidate for clerk of the city court of Glenville, in October, 1933, and his announcement contained this notice to his fellow citizens: "I am sure I am capable of handling the duties of the office; and, if elected, I will serve to the best of my ability." It was further shown that plaintiff made application to the Civil Works Administration for work, and in his application stated that he had an artificial leg and that he could perform manual labor. He explained that he made this application because he was told that some job would be given him which he could perform. The jury rendered a verdict in favor of the plaintiff.

In *Cato* v. *Ætna Life Ins. Co.*, 164 *Ga.* 392 (138 S. E. 787), the Supreme Court had under consideration a suit brought on a policy of insurance providing for total and permanent disability, which provided: "If such disability has existed for a period of 6 months, and if such disability presumably will, during lifetime, prevent such employee from pursuing any occupation for wages or profit, such employee shall be deemed to be totally and permanently disabled within the meaning of the policy." It was there held, in construing the meaning of this provision, that "Total disability exists when one is wholly disabled from pursuing the usual and customary duties of his employment on which he depends for a living. When the insured is incapacitated from performing any substantial part of his ordinary duties, a case of total disability is presented, al-

though he is still able to perform some parts of his work. Total disability is inability to do substantially all of the material acts necessary to the transaction of the insured's occupation, in substantially his customary and usual manner. Total disability does not mean absolute physical inability to work at one's occupation, or to pursue some occupation for wages or gain; but it exists if the injury or disease of the insured is such that common care and prudence require him to desist, and he does in fact desist, from transacting his business. In such circumstances, total disability exists." The ruling there made was followed in *New York Life Insurance Co.* v. *Tarbutton,* 45 *Ga. App.* 97 (163 S. E. 229) ; *New York Life Insurance Co.* v. *Oliver,* 45 *Ga. App.* 756 (165 S. E. 840) ; *Marchant* v. *New York Life Insurance Co.,* 42 *Ga. App.* 11 (155 S. E. 221) ; *New York Life Ins. Co.* v. *Thompson,* supra. As will be pointed out later in this opinion, this rule has been somewhat modified in the recent case of *Prudential Ins. Co.* v. *South,* 179 *Ga.* 653 (177 S. E. 499). The insured in that case was a switchman. He sustained an injury which caused the loss of his right arm. The court held that whether he was totally and permanently disabled within the terms of the policy was, under the circumstances of the case, a question for the jury. In the opinion it was said: "In cases of this character, the policy should be construed liberally to effectuate the general purpose of the contract, which is to indemnify the insured for the loss of time by reason of incapacity to perform his usual work or carry on his usual business by reason of a happening covered by the policy." It was further said: "Total disability, irrespective of the technical variations in the language employed, should be given a rational and practical construction. The phrase is a relative term, depending upon the circumstances and peculiar facts of each particular case, and is usually a question of fact to be determined by the court or jury trying the case."

The defendant company, in the case at bar, contends that the plaintiff could not, in any event, recover disability benefits for the period between September, 1924, when he went back to school, and May, 1929, when he graduated from high school, because, during that period, he was engaged in the very occupation which he had described in his application as being his occupation. Under the terms of the policy, and a rational construction thereof, we do not think this position sound. First, it must be remembered that the

event insured against, under the very provisions of the policy itself, was that of *total and permanent disability,* and that that term is defined in the policy to be whenever the insured "is wholly disabled by bodily injury or disease, so that he is prevented thereby from engaging in any occupation whatsoever for *remuneration or profit.* Certainly it can not be contended that the occupation of "going to school" was an occupation for remuneration or profit, the disability to perform the substantial duties of which the parties to the contract intended to insure against. A statement of the applicant for an insurance policy that his occupation was that of "going to school" or being a "student" is tantamount to saying, in so far as a gainful occupation is concerned, that he was unemployed. The insurance policy provided for total and permanent disability from the pursuit of any occupation for "remuneration or profit;" then what possible effect could it have on the liability of the insurer that the insured was still able to perform the substantial duties of an occupation which was not one of remuneration or profit? We think that a proper construction of the answer made by the insured and the evidence introduced would be that his real occupation was that of "farming," except that during part of the year he attended school. Generally, in insurance policies providing for total and permanent disability, the minds of the parties meet and agree upon a particular state of facts applicable to the insured and the insurer. The insurance company is informed of the profession or occupation of the insured. It is common knowledge that the rates for such insurance are based to a great extent on this fact. In a suit brought on such a policy, where the insured was at the time of the injury confining his labors to the same occupation stated in the policy, he bases his claim on the fact that he is totally and permanently disabled from performing the substantial duties of his ordinary occupation (*Cato* v. *Ætna Life Ins. Co.,* supra), yet he must show to the jury further that he is not only totally and permanently disabled from performing the substantial duties of his ordinary occupation, but also "such other employment, if any, approximating the same livelihood" as he "might fairly be expected to follow, in view of his station, circumstances, and physical and mental capabilities." *Prudential Life Ins. Co.* v. *South,* supra. Certainly, should the evidence disclose that the insured did actually perform the substantial duties of a

gainful occupation, which occupation approximated his same livelihood, and was one which he "might fairly be expected to follow, in view of his station, circumstances, and physical and mental capabilities," after his injury, whether it be the occupation pursued by him at the time of the contract or at the time of the injury, or some other occupation, he would not be entitled to recover. In the instant case, according to the evidence, the real occupation of the insured at the time of the execution of the contract, was that of farming. The evidence does not disclose that since his injury he has performed the substantial duties of this occupation, or any other occupation which approximated the same livelihood and was one which he "might fairly be expected to follow, in view of his station, circumstances, physical and mental capabilities." In determining the question of total and permanent disability under the rule laid down by our Supreme Court, the facts that the plaintiff had been to school, had obtained a high school education, had pursued the occupation of farming, would be circumstances for consideration of the jury, tending to throw light on whether the insured was totally and permanently disabled from performing the substantial duties of his usual and ordinary occupation, or such other employment, approximating the same livelihood as he "might fairly be expected to follow, in view of his station, circumstances, and physical and mental capabilities." *Prudential Ins. Co.* v. *South,* supra.

The defendant points strongly to evidence introduced at the trial, to the effect that the insured was, after his alleged injury, a candidate for clerk of the city court of Glenville and had advertised himself as being fully capable of performing the duties of the office; also to evidence that the insured applied to the Civil Works Administration for work, stating that he was capable of performing manual labor. These certainly amounted to circumstances for the consideration of the jury, but they were not in any way conclusive on the question of whether or not the insured was totally and permanently disabled from performing the substantial duties of his ordinary employment or occupation, or such other occupation, approximating the same livelihood, which he "might fairly be expected to follow, in view of his station, circumstances, physical and mental capabilities." *Prudential Life Ins. Co.* v. *South,* supra. The public, who generally settle claims of political aspirants, did

not apparently think the insured capable of the office, for he was defeated; nor is it shown that the Civil Works Administration considered him capable to the extent claimed by him, for it is not shown that he was given employment. Then, certainly the jury were not bound to take his admissions as conclusive on the question to be decided. From what has been said we are of the opinion that the verdict of the jury is sustained by sufficient competent evidence, and that the court did not err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*