## 24902, 24903. PRUDENTIAL INSURANCE COMPANY OF AMERICA *v.* RICHARDSON.

Decided March 12, 1936.

*Spalding, MacDougald, Sibley & Brock, Estes Doremus, H. C. Cox,* for Prudential Insurance Company.

*C. N. Davie, J. F. Kemp, A. M. Kelly,* contra.

MacIntyre, J. 1. John W. Richardson filed suit against the Prudential Insurance Company of America on May 3, 1934, for total and permanent disability on a certificate of insurance issued to him on a group insurance policy taken out by his employer, the Georgia Railroad Company. It appears that on February 28, 1929, the insured was in an automobile accident in which he sustained a fracture of his skull which he alleged caused him to become, and that he had continued to be, totally and permanently disabled within the terms of the policy sued upon. The jury returned a verdict in favor of the plaintiff for the face amount of the policy. The defendant filed its motion for new trial and later amended same. Exception was brought to this court to the judgment overruling said motion. At the time of his injury, Richardson was employed by the Georgia Railroad Company at a salary of $120 per month and he has not been able to return to his employment with the railroad company since his injury on February

28, 1929. "I have not been able to work since that time; I returned to my mother's home in this county and stayed there until 1932. During that time I was unable to do anything. * * *. My condition is such that I have pains in my head and suffer from dizziness. I am unable to do the work that I was doing at the time of the injury. * * * I suffer with loss of memory and from dizziness and am very nervous. My back is hurt and pains me and I can not think." In the fall of 1932 plaintiff married a widow, who had a child by her former marriage; and in 1933 and 1934 he operated a one-horse farm and had made arrangements to continue to operate this one-horse farm for the year 1935. As to this, the plaintiff testified: "I married a widow and have a step-child. Yes, we farmed in 1933 and 1934. Yes, we had garden patches and made some corn. I didn't do all the farming. I plowed as much as I could. In doing so, I had to drag around. I could only plow in the morning and late in the evening because the sun affected me and caused me to have dizzy spells. I worked on the halves, and had to pay for my guano, for the ginning, bagging and ties. I am unable to work but did the best I could so as to make a living. My wife and step-child hoed the corn, chopped the cotton, picked the cotton, and did the other things necessary around the farm. My family also helped me in making these crops. I did all the plowing. Sometimes the man I rented from helped me, and sometimes I helped him. We helped each other." Mrs. L. L. Richardson, mother of the plaintiff testified: "Yes, he married in the fall of 1932 and when he did he left our home and undertook to farm. I don't know whether he made five or six bales of cotton in either of the years 1933 or 1934, but I know he had some cotton and I know that his wife and child helped him, and I know my family helped him. My husband, his father, helped him. I know, too, he was unable to do any work but he did it because he had to. He is not able to work and shouldn't try to do anything." Dr. Stewart testified in part, "I asked him what farming he could do; he said he could plow an hour or two and when the sun comes up he couldn't stand it. . . I wouldn't say that he was totally and permanently incapacitated from carrying on any kind of work. * * * Considering it was four years from the time of the injury and the condition he was in at that time, I consider if he had not cleared up in four years, he

would probably be in permanent condition I found him at that time." It appears from the evidence that on August 14, 1929, the plaintiff submitted the following proof of loss to the insurer: "Q. Has the insured recovered sufficiently to engage in any gainful work; if so, give date on which first able to resume any duties. A. First able to resume duties 15th day of June, 1929. Q. Approximately when do you think the insured will be able to perform some work; kindly give date. A. July 1, 1929. Q. Do you consider the insured so disabled that he or she will FOR ALL TIME be prevented from engaging in any gainful work? No. *Note*—Mr. Richardson received a rather serious brain injury, in addition to the fracture of the skull. He has been totally disabled since the accident. In my opinion, he should be able to do some kind of light work by July 1, 1929. Signed: Hugh Cochran, M.D." The policy provided that: "If any person insured under this policy shall become totally and permanently disabled, either physically or mentally, from any cause whatsoever, to such an extent that he (or she) is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his (or her) lifetime, and if such disability shall occur at any time after the payment of the first premium on account of such insurance, while this policy is in full force and effect and the said person is less than sixty years of age, the company, upon receipt of due proof of such disability, will grant the following benefits." Counsel for the plaintiff in error state in their brief that the record in this case presents for consideration the following issues, to wit: (1) That the evidence demands a finding that Richardson was not totally and permanently disabled within the terms of the policy of insurance . (2) That due proof of the existence of total and permanent disability is a condition precedent to the right to maintain this action, and that the proof submitted failed altogether to show the existence of that degree of disability necessary to a recovery. We think that both of these issues are decided adversely to the plaintiff in error by *Prudential Insurance Co.* v. *South,* 179 *Ga.* 653 (177 S. E. 499), *Prudential Insurance Co.* v. *Hicks,* 52 *Ga. App.* 311 (183 S. E. 102), and *Life Insurance Company of Virginia* v. *Williams,* 48 *Ga. App.* 10-24 (172 S. E. 101). Counsel for the plaintiff in error state in their brief while "the evidence definitely establishes that

Richardson is not able to resume his employment with the railroad," yet, "with equal definiteness, it does establish that he has been, and is, engaged regularly in the occupation of farming * * * and that Richardson is, as a matter of law, not disabled within the terms of this policy of insurance, inasmuch as he is able to, and is actually carrying on a regular occupation." In *Prudential Insurance Company* v. *South,* supra, where the language of the policy was the same as in this case, the rule was stated that: "the expressions 'any occupation' and 'any work' . . should be construed to mean the ordinary employment of the particular person insured, or such other employment, if any, approximating the same livelihood as the insured might fairly be expected to follow, in view of his station, circumstances, and physical and mental capabilities . . if the insured is so incapacitated that substantially all of the material activities of any such employment are reasonably closed to him, he is totally disabled within the meaning of the policy;" and (page 659) that if the insured "should at any time after his injury so readjust himself to his handicap by education or otherwise, or find himself, from any circumstances, reasonably able to pursue his ordinary work or any work of like productivity, his alleged total and permanent disability would no longer exist, within the meaning of this policy, these terms being relative, and the condition thereby described being subject to change by circumstances." This case was followed in *New York Life Insurance Co.* v. *Thompson,* 50 *Ga. App.* 413 (178 S. E. 389). In *Prudential Insurance Co.* v. *Hicks,* supra, involving identical provisions, the plaintiff was a railroad fireman and engineer, receiving $225 per month. He received an injury which caused the loss of his left eye. "The unconflicting evidence showed that the loss of one eye had incapacitated him from receiving employment in his former or any similar trade or occupation; that his education was limited, and he knew no other special trade or occupation; that he suffered considerable pain, and his artificial eye caused mucus to accumulate in the eye socket, requiring a removal of that eye at night and sometimes during the day. He was 36 years old at the time of the injury, reared on a farm, which he left at the age of 17; and he had worked as a common laborer for a machine works for about 18 months, and then entered the employment of the railroad company. There, his first work was as a helper in the car shops in

1912, 'moving lumber and things like that,' and doing anything his head car-builder wanted him to do, until he was promoted to his last special occupation in 1920. After the injury, he and a partner bought a filling-station in 1931, a business with which he had no experience or familiarity. There he did the usual manual work required for 17 or 18 months; but earned no profits, losing $350 in his investment. At the time of the trial in 1935, he had been employed as a deputy sheriff and bailiff at intervals for 23 months, from which he earned a total of $349.37. The only other work which the evidence showed he had been offered or could obtain was that of an ordinary laborer for the railroad, working 10 hours a day at 15 cents an hour 6 days a week, from which he might have obtained for some unstated time, under the proved contingencies of depression employment causing frequent lay-offs of such employees, $9 a week, or a total of about $40 a month. He did not accept this employment." The court said: "The sole question argued under the general and special grounds is whether, under the evidence stated in the clause of the policy quoted, the plaintiff was entitled to recover for a total and permanent disability." It was pointed out in that decision that "Under the *South* decision, even though as contended by counsel for the insurer, the policy can not be held to be one of income insurance, guaranteeing the insured against depreciation of his income on account of any injury; yet if an insured by his injury is rendered incapable of continuing in his former or a similar occupation, *but is able to perform some other work* [italics ours], that work must not only be 'an employment having some degree of permanency, though not amounting to an occupation,' but must be of 'like productivity,' 'approximating the same livelihood.'" Therefore, in a case of this character, where it is shown that the insured because of a disability can not perform the usual and customary duties of his former employment, it generally becomes a question for the jury to determine whether or not work subsequently selected by him for the purpose of making a living is one "having some degree of permanency, though not amounting to an occupation;" of "like productivity," "approximating the same livelihood." It can not be said in the case at bar that the fact that the insured, with the help of others, operated a one-horse farm on which he raised six bales of cotton, especially in view of the ruling in *Prudential Insurance Company* v. *Hicks,* supra, that

he (the insured) was not, as a matter of law, totally disabled within the provisions of the policy. Under the decisions cited, it remained a question for the jury to decide.

2. Nor, do we think under the above rule that the proof of loss submitted by insured could be held to be so insufficient as to bar recovery. The requirement that the insured should submit "due proofs of loss" does not mean that the proof of loss must satisfy the insurer of the existence of disability under the terms of the policy but it is sufficient "that a reasonable proof be given of the matters specified or implied in the policy." The fact that the insured reported to the company that he would be able to do "some work" on July 3, 1929, and that his doctor did not consider him disabled "for all time" or from "engaging in any gainful work" was not proof that the insured was not totally disabled within the meaning of the terms of the policy and we think the note appended to the proof by his doctor that "Mr. Richardson received a rather serious brain injury, in addition to the fracture of the skull. He has been disabled since the accident. In my opinion, he should be able to do some kind of *light* work by July 1, 1929" (italics ours), was sufficient notice and proof of the disability claim. The case is easily distinguished from that of *Columbian National Life Insurance Co.* v. *Buntin,* 43 *Ga. App.* 698 (159 S. E. 891). From what has been said we think the action of the judge in overruling the motion for new trial was proper.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*