## 59401, 59402. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY v. POSS; and vice versa.

BIRDSONG, Judge.

Contract of insurance. The insured employee, Virgil Poss, was employed by Armour and Company as a truck delivery driver delivering cuts of frozen and/or fresh meat to various customers. Poss' responsibilities included the loading of his truck, the delivery of the meat products to the customers' place of business, and off-loading the meat into the customers' place of business. He was required to drive intrastate and interstate distances, often remaining overnight. The cuts of meat ran in weight from packaged small cuts weighing 20 to 30 pounds a package to sides of beef weighing 160 to 180 pounds. On one of his deliveries, Poss was carrying a side of beef weighing 160 pounds or more into the premises of the customer. While trying to carry the side up some steps onto a loading platform, the weight became overwhelming and Poss fell back approximately two steps. He experienced pain in his back at the time of the fall. The customer then came out and helped Poss carry the meat into the store. Poss continued to experience pain and reported the incident to his employer. Ultimately, Poss was examined by a surgeon who performed a laminectomy. After the operation, Poss remained under the doctor's care and at the time of trial, Poss still had not been released for any kind of income producing work. Armour had called Poss on a couple of occasions and offered him lighter duties, but Poss had not been released by the doctor. The doctor by deposition testified that Poss was permanently disabled to the extent of about 25% and could never return to his work as a truck driver and deliverer of meat products weighing up to 150 pounds and more. However, the doctor stated that when Poss was released back to gainful employment, Poss would be able to perform an appropriate type of lighter labor. A witness called by the insurer, John Hancock Mutual Life Insurance Co., testified as to many different types of occupations that Poss could follow, many of which with additional education or training could earn him more than the approximately $18,000 annual income Poss enjoyed as a driver-deliverer for Armour. Poss as an insured made demand upon the insurer, John Hancock, for disability payments as provided in the contract of insurance. John Hancock, denying liability, refused payment. Poss brought this suit seeking the coverage furnished by the policy, penalties and attorney fees. The trial court refused to direct a verdict for liability in favor of John Hancock but granted a directed verdict to John Hancock on the issue of bad faith penalty, punitive damages and

attorney fees. The issue of disability was submitted to the jury upon a series of charges which John Hancock asserts misstated the applicable principles of law. The jury returned a verdict in favor of Poss in the amount of the policy coverage, to wit: $6,000, which was made the judgment of the court. John Hancock then unsuccessfully moved to have the trial court set aside the judgment on liability and grant a partial new trial on the issue of total and permanent disability and alternatively renewed its motion for directed verdict made at the close of the evidence. The trial court denied all these motions. John Hancock brings the main appeal enumerating as error the denial of the motions and portions of the charge of the court. Poss brings a cross appeal complaining of the directed verdict in favor of John Hancock as to bad faith penalties, punitive damages, and attorney fees. *Held:*

1. As to the main appeal (Case No. 59401), the issue to be considered is not to be confused with collection of workers' compensation. Rather, the issue concerns disability compensation provided by an employer in addition to workers' compensation. The amount of the permanent disability coverage provided for $6,000 payable in twelve or twenty-four installments with the amount dependent upon the period of compensation. The coverage provided was described as follows: "Any Employee who shall furnish the Insurance Company with due proof that he has become totally disabled by bodily injury or disease, and has been continuously prevented thereby from performing any and every duty pertaining to his occupation and presumably will during his lifetime be prevented from pursuing any occupation for wages or profit shall be deemed to be totally and permanently disabled and the insurance hereunder will become available, provided such disability or loss has been sustained before attaining the age of 60."

John Hancock urges that the evidence showing that Poss was only 25% disabled and that he would be able to perform work for wages in the future, established conclusively that Poss had not been permanently and completely disabled as contemplated by the terms of the insurance coverage. In support of its position John Hancock relies upon the case of *Mutual Life Ins. Co. v. Barron,* 198 Ga. 1 (30 SE2d 879). The trial court in apparent reliance upon the case of *Cato v. Aetna Life Ins. Co.,* 164 Ga. 392 (138 SE 787), held that a jury question was presented as to whether Poss was permanently and completely disabled. It is John Hancock's argument that the Supreme Court effectively overruled the *Cato* case in its decision in *Barron.* We disagree with the contention that the basic holding in *Cato* was overruled. A fair reading of *Barron* shows that *Cato* was clarified and then ratified as clarified.

In *Cato,* the policy of insurance contained the following language: " 'If total disability of any employee entitled to insurance under the schedule of insurance contained in this policy begins before the age of 60, and if due proof be furnished the company after such disability has existed for a period of six months, and if such disability presumably will during lifetime prevent such employee from pursuing any occupation for wages or profit, such employee shall be deemed to be totally and permanently disabled within the meaning of this policy.' " (P. 393) The policy was implemented by a statement of the employer to the employees by the explanation: " 'The policy also provides for the amount of full insurance, subject to the terms of the policy in the event a permanent total disability occurs before the age of sixty. By permanent total disability is meant permanent and total inability to pursue any gainful occupation.' " (P. 394) Cato suffered from tuberculosis and was employed as a weaver in a cotton mill. As the disease became progressively worse, Cato was unable to perform full time work as a weaver. However, up until his final disabling illness, Cato worked at his normal duties as a weaver but at piece work wages and he earned a percentage of his full time salary.

The Supreme Court in discussing "total disability" utilized the following language: "Total disability exists when one is wholly disabled from pursuing the usual and customary duties of his employment on which he must depend for a living. Total disability is the antithesis of partial disability. One is the opposite of the other. [Cits.] It follows as a necessary consequence that the insurer is not liable as for a total disability when the accident or disease has merely prevented the insured from doing as much in a day's work as before. Such lessened earning capacity may be a case of partial disability, but not a case of total disability. [Cit.] But when the insured is incapacitated from performing any substantial part of his ordinary duties, a case of total disability is presented, although he is still able to perform some parts of his work . . . Total disability does not mean absolute physical inability to work at one's occupation, or to pursue any occupation for wages or gain, but it exists if the injury or disease of the insured is such that common care and prudence required him to desist and he did in fact desist from transacting his business." *Cato,* supra, pp. 398-399. The *Cato* case was decided in 1927. In 1930, this court in *Marchant v. New York Life Ins. Co.,* 42 Ga. App. 11 (155 SE 221) commented further on the inability to pursue "any" vocation. "Common knowledge of the occupations in the lives of men and women teach us that there is scarcely any kind of disability that prevents them from following some vocation or other, except in cases of complete mental inertia.

We have examples of persons without hearing, and without sight, following a vocation; some without feet, and some without hands, engaged in business. The achievements of disabled persons are seemingly marvelous. Under defendant's theory, the plaintiff might embark in the peanut trade, or follow the business of selling shoestrings or lead pencils, or follow some similar calling, in which instances, under the rule invoked, there would be no disability within the meaning of the policy. In our opinion, such was not within the contemplation of the parties. In order to carry out the intent of the parties, it is our duty to disregard the broad language used, which would have the effect to defeat the purpose of the contract and render it a nullity." (P. 22)

In 1934, the Supreme Court again addressed the problems presented by a contract of insurance containing this "total disability" coverage. In *Prudential Ins. Co. v. South,* 179 Ga. 653 (177 SE 499) at p. 658, it was stated (and we conform the language to the instant facts): "This being a group policy covering employees of a [meat packer], the insurer necessarily knew that the plaintiff was a [meat packer] employee; and . . . it presumably knew that his own particular work was that of [driving a truck interstate and intrastate, requiring the hefting and carrying of cuts of meat ranging in weight from 20 to 180 pounds]. From common knowledge it may also be inferred that the premium rates were based upon the risk assumed. The language of the disability clause shows that it was an abstract or blanket form designed to apply to any person who might take a policy containing such form . . . [T]he . . . words [lost] their broad expanse and generality when the *form* became a contract between these parties. The expressions 'any occupation' and 'any work' were thus converted into words of concrete signification, and should be construed to mean the ordinary employment of the particular person insured, or such other employment, if any, approximating the same livelihood, as the insured might fairly be expected to follow, in view of his station, circumstances, and physical and mental capabilities. [Cits.] If the insured is so incapacitated that substantially all of the material activities of any such employment are reasonably close to him, he is totally disabled within the meaning of the policy." In 1942, the Supreme Court once again examined the interplay of the interpretations of "total disability" contained in *Cato* and *South.* In *Metropolitan Ins. Co. v. Johnson,* 194 Ga. 138 (20 SE2d 761) at p. 141, it was said: "The clear and unmistakable meaning of the rule just quoted is that if any substantially material activities of the employment remain open to the insured, he is not totally disabled within the meaning of the policy, although he is at the same time

unable to perform some or even many of the substantial material activities of his employment." Finally in the case relied upon by the appellant John Hancock, the Supreme Court, in 1944 in *Mutual Life Ins. Co. v. Barron,* supra, when discussing the ruling made in *South,* supra, at p. 8, stated: "The excerpt . . . would clearly imply that, before the insurer would be justified in refusing to continue total-disability payments, it should be made to appear that the insured had regained substantially his entire former earning capacity, whereas under a proper construction of the contract, it would be necessary to show only that he had regained so much thereof as would enable him to perform some *substantial part* of the duties of his profession or of such other work, if any, approximating the same livelihood, as he might be fairly expected to follow in view of his station, circumstances, and physical and mental capabilities." The Supreme Court continued, at p. 9: "Suffice it to say, however, that both this court and the Court of Appeals have generally sought to avoid the unreasonable and absurd results which would necessarily follow if the language of policies like this one should be given a strict and literal, instead of a practical and reasonable, interpretation. This is what was meant and all that was meant by the statement in the *South* case, 'this court is committed to the more liberal doctrine.' " Finally, the court in *Barron,* supra, held at p. 12, "The clause under consideration was intended primarily as insurance against loss of earning capacity, and was not necessarily a provision against loss of income."

Applying the above interpretations of contracts involving the same or similar "total disability" provisions, we conclude that the trial court did not err in denying John Hancock's motion for directed verdict on the issue of liability nor in denying the motions for new trial or to set aside the verdict on liability. In this case Poss testified that he had limited education and had worked for all his adult life for Armour. He had trained for a while in the plant but for the several years preceding his injury, his only duties were to load his truck based upon orders given by customers, drive his truck both intrastate and interstate to the business locations of the customers and off-load the meat into the customers' establishments. These packages often weighed up to 180 pounds. As a result of his injury, Poss furnished medical testimony that he could no longer drive a truck, he could not load his truck and could not deliver to his customers' establishments or place the orders in the customers' establishments. All he could do was to handle items that did not weigh more than 20-30 pounds. The testimony offered by John Hancock showed that Poss could be retrained and that after such retraining he could probably enter a vocation that would earn him

as much or more than the $18,000 Poss earned as a route man. As we understand John Hancock's argument, it contends that the policy in effect is a protection against a loss of income. Thus, if Poss can be retrained so as to earn as much or more money, he is certainly not totally disabled. But as we read the cases above discussed, the policy was designed to cover Poss' income earned in the occupation as a truck route man. The policy was issued when he was so employed and was designed to insure that his income earned while in that capacity was protected. Perhaps if there had been evidence that Poss substantially performed other duties consistent with driving a truck, and carrying loads up to 180 pounds, and considering his mental, physical and experiential capabilities, then even if Poss could not perform all such duties but could perform substantially those duties, he would not be permanently, totally disabled. However, all that the evidence presented for the jury's consideration established, was that Poss was still unable to work in any capacity as of the time of the suit. And that in the future he would be able to function in some capacity not involving long driving or carrying heavy loads, the occupation he was fulfilling at the time he became insured. All the vocations offered by the expert witness called by John Hancock involved different and unrelated types of work, i. e., dental lab technician, telephone sales, a security officer, cashier, etc. There is no dispute that Poss did desist from his duties as a driver with an extended route involving heavy manual labor and that he cannot resume those duties. The duties of a route man and the suggested retrainable vocations are so dissimilar that it cannot be said that they bear any material relationship, one to another (*Metropolitan Life Ins. Co. v. Johnson,* supra, p. 143), and therefore, have no relevance to Poss' insurability as a truck driver with the duties described. It follows that the evidence offered by John Hancock was insufficient to raise the issue of nonliability because of partial ability to perform the insured earning capacity. Likewise, it follows that the trial court did not err in failing to direct a partial verdict or in refusing a new trial on that basis.

2. John Hancock enumerates as error four charges of the trial court that in essence informed the jury that total disability means an inability to follow one's usual occupation in a customary and usual manner; that total disability when once shown to exist does not necessarily contemplate that the total disability must continue for the remainder of a person's life; that "permanent" must be construed in the light of the contractual undertaking; and that the words "permanent" and "continuously" though seeming to indicate a lasting condition, when taken in context with other language in the contract of insurance, the fair construction of those words is that

the total disability need not last or exist forever. We do not conclude that the charges of the court in these regards were erroneous. As discussed above, total disability is properly considered within the context of the insured's customary and usual vocation. Moreover, the contract did not provide for continuous payments throughout the remainder of the insured's life. Once total disability had been established and continued, the payments were scheduled for a period of twelve or twenty-four months. John Hancock does not contend that if an insured is totally disabled, without question, for more than 24 months and files proper application, it would decline to pay benefits so long as the insured lived so as to ascertain whether at some future time the insured might recover. Likewise, there is no contention that should payments be made and sometime thereafter the insured recover his earning capacity, John Hancock would be entitled to recover the payments because the insured obviously was not permanently and totally disabled. The question of "total and permanent disability" is a question for the jury. *Prudential Ins. Co. v. South,* supra, p. 659. The charge of the trial court was adjusted to the law and the facts and was not error.

John Hancock also complains that the trial court improperly refused to charge the jury that considering Poss' station, circumstances, and physical and mental capabilities, he could be educated or trained to pursue another occupation for wages that approximated his livelihood from his former occupation as a truck driver; and that if such was shown, that Poss was for that reason not permanently disabled; and that if other occupations approximating Poss' occupation as a truck driver remained open and available to him, then Poss would not be permanently disabled. As indicated in our earlier discussion in Division 1 of this opinion, these requested instructions were not supported by the law and were not adjusted to the evidence as to Poss' actual condition. The trial court did not err in refusing these charges. *Seaboard C. L. R. Co. v. Thomas,* 229 Ga. 301 (190 SE2d 898); *Reynolds v. Reynolds,* 217 Ga. 234, 269 (123 SE2d 115); *Spain v. Spain,* 203 Ga. 411 (2) (47 SE2d 279).

3. In his cross appeal (Case No. 59402), Poss argues that the trial court erred in denying him statutory penalties, punitive damages and attorney fees. As becomes readily apparent to the careful reader of the cases cited in this opinion, there is great difficulty in reconciling the case law as to the issue of liability. Our examination convinces us that the retraining or re-education as contemplated in those cases refers to enabling the insured to return substantially to the occupation (or one similar) and earning capacity he occupied at the time the insured became insured, and not to some unrelated occupation that supplies merely the same or

substantially the same income. The judgment of the trial court that there was a significant jury issue as to liability fully supports the conclusion by the trial court that there was no bad faith. As to the recovery of penalties, damages, and attorney fees, a refusal to pay in bad faith means a frivolous and unfounded denial of liability. If there is any reasonable grounds for an insurer to contest the claim, there is no bad faith. *Dependable Ins. Co. v. Gibbs,* 218 Ga. 305, 316 (127 SE2d 454); *Ford Motor Credit Co. v. Milline,* 137 Ga. App. 585, 591 (224 SE2d 437). There is no merit to this contention by Poss.

*Judgments affirmed. Deen, C. J., and Sognier, J., concur.*

ARGUED FEBRUARY 6, 1980 — DECIDED APRIL 8, 1980 —

*Daryll Love, Anthony L. Cochran,* for appellant.

*W. LaRue Boyce, Terence G. Kelly, Douglas N. Campbell,* for appellee.