### 25009. JOHNSTON *et al.* v. TRAVELERS INSURANCE COMPANY.

DECIDED DECEMBER 5, 1936. ADHERED TO ON REHEARING DECEMBER 17, 1936.

*Nathan Jolles, Isaac S. Peebles Jr.,* for plaintiffs.
*Hull, Barrett & Willingham,* for defendant.

STEPHENS, J. The plaintiffs in error brought an action against Travelers Insurance Company on a certificate of insurance under and subject to the terms and conditions of a group life policy issued to the Augusta Factory, alleging that they were the beneficiaries of a certificate issued to Oscar T. Hair on November 23, 1927, whereby he was insured in the sum of $1000 as a death benefit; that he died May 9, 1933; that all premiums due on the policy were paid up to and including the month of February, 1931; that on October 30, 1930, Hair became totally disabled and

was unable to work from that time until he died; that from October 30, 1930, until February 28, 1931, the defendant had permitted the insured and the plaintiffs to pay the premium of sixty cents per month, and led the plaintiffs to believe that the payment of the same was all that was necessary to continue said policy in force, so that at the death of Hair the plaintiffs could recover on the certificate of insurance; that on February 23, 1931, payment was made to the defendant to continue the policy in force during February, 1931; that on February 28, 1931, the factory ceased operation, and the defendant on this date wrongfully refused to accept further payments then or at any other time; that by reason of this act the policy was in full force at the death of Hair; that on October 3, 1933, in response to a request to furnish necessary blanks to present this claim, the defendant denied any liability under the policy; that the group life policy under which the certificate was issued was not in the custody or control of the plaintiffs, and they were unable to attach a copy, but that on the date that Hair was permitted a leave of absence from the factory, October 30, 1930, and on February 23, 1931, the group policy was in full force. The certificate attached to the petition as an exhibit stated that under the terms of a group life policy issued to the Augusta Factory by Travelers Life Insurance Company the life of Oscar T. Hair was insured for the sum of $1000, if death should occur during the continuance of the policy while the employee was insured thereunder. It also stated: "The provisions of the policy for permanent total-disability benefits are printed upon the third page of this certificate and made a part hereof."

Demurrers were filed. The plaintiffs amended the petition, attaching a copy of the group life policy, and alleging that the factory and the insurance company attempted to cancel the group policy, by a rider dated February 18, and attached to the policy, without notice to the plaintiffs or the insured; that the defendant, through its agent C. T. Hair, accepted from the plaintiffs sixty cents on February 23, 1931, thereby leading them to believe that they could continue the policy in force by continuing the monthly payments; that the attempt to cancel the policy was ineffectual as to the plaintiffs' rights, and the defendant by said acts waived the provision in the certificate and the group policy for the continuance of the insurance, and is now estopped to set up the

same as a defense; that from October, 1930, until February, 1931, the monthly premiums were paid to C. T. Hair, who was authorized by the defendant to accept said payments which would continue the insurance in force, which premiums were accepted by the defendant knowing that the said Hair had been disabled and unable to work since October, 1930; that said agent of the defendant advised the plaintiffs that nothing else was necessary to continue the policy in force during the disability of the insured; that on February 28, 1931, the agent refused to accept further payments, stating that he had been instructed by the defendant not to accept further payments; that the plaintiffs had been willing at all times to pay any premiums required, and made every effort to continue the policy in force, and relied on the representations of the defendant's agent; and that defendant is estopped to claim a forfeiture by reason of said provisions, and will be held to have waived the provisions of the certificate with reference to conversion or continuance of the certificate other than by the method as represented to the plaintiffs. The policy attached to the amendment contained this provision numbered 5: "The insurance of any employee covered hereunder shall end when his employment with the employer shall end, except in a case where at the time of such termination the employee shall be wholly disabled and prevented by bodily injury or disease from engaging in any occupation or employment for wage or profit. In such case the insurance will remain in force as to such employee during the continuance of such disability for the period of three months from the date upon which the employee ceased to work, and thereafter during the continuance of such disability and while this policy shall remain in force until the employer shall notify the company to terminate the insurance as to such employee. Nothing in this paragraph contained shall limit or extend the permanent total-disability benefit to which an employee shall become entitled under this policy. Temporary lay-off or leave of absence for reasons other than physical disability as aforesaid shall not be considered as termination of employment for the purpose of this insurance unless the employer shall so elect." Also this provision: "1. Permanent total-disability benefit: If any employee shall furnish the company with due proof that while insured under this policy, and before having attained the age of sixty, he has become wholly disabled by

bodily injuries or disease, and will be permanently, continuously, and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit, the company will waive further payment of premium as to such employee and pay in full settlement of all obligations to him under this policy the amount of insurance in force hereunder upon his life at the time of the receipt of due proofs of such disability, in a fixed number of instalments chosen by the employer from the table in the paragraph entitled 'modes of settlement,' the first instalment to be paid immediately upon receipt of due proofs of such disability." By a rider attached to the policy, dated February 18, 1931, the defendant and the Augusta Factory agreed that all insurance thereunder should terminate, effective February 23, 1931, at 12:01 a. m. The defendant renewed its demurrers, and filed additional grounds of demurrer. The court sustained all the demurrers and dismissed the action.

Under the facts alleged in the petition as amended, it was error to dismiss the case. Oscar Hair was insured by the defendant in an indivisible contract against two risks: permanent total disability, and death; the amount of indemnity being $1000 in either event. If he became entitled to the disability benefit and availed himself of it, the death benefit would be superseded and the certificate would be satisfied and terminated. But there is no provision in the certificate or in the group policy that the insured would lose his life insurance by failing to apply for the disability benefit when entitled to it. Nor would such failure work a forfeiture of the insurance. *Northwestern &c. Ins. Co.* v. *Dean,* 43 *Ga. App.* 67, 72 (157 S. E. 878). The life insurance would be terminated only by payment of the disability benefit, or by the certificate ceasing to be of force. Neither of these events happened before the death of the insured. The alleged facts were that Hair became permanently and totally disabled on October 30, 1930. From that time until February 23, 1931, he and his beneficiaries paid the premiums for the insurance, which were accepted by the insurer knowing that the insured had been disabled and unable to work since October 30, 1930. On February 18, 1931, the insurer and the employer of the insured agreed to cancel the group policy, effective at 12:01 a. m., February 23, 1931. On February 28, 1931, the insurer refused to accept any further

premiums. The only explanation given by counsel for the insurance company for the acceptance of the premiums after the disability occurred is that Hair was still employed by the factory, and that these payments were regular and could not in any manner compromise or estop the insurance company. This claim is not tenable, because the fact that the premiums were paid by Hair and his relatives, instead of by his employer, indicated that his employment had ended. But it is said that the allegation that Hair was given a leave of absence on October 30, 1930, showed that his employment did not end on that day. This claim can not be sustained, because the policy provides, at least by clear implication, that a leave of absence on account of physical disability terminates the employment "for the purposes of this insurance." See provision 5 quoted above. No explanation is given why the insurer accepted a premium on February 23, 1931, the day when the cancellation of the group policy had become effective. The situation then was that Hair had a certificate under which liability had arisen, one of the risks having occurred. Only the formality of proof was lacking to give him a complete right of action. By standing on the cancellation of the group policy, and refusing the further premium tendered on February 28, the insurance company in effect denied any liability under the certificate, and thereby relieved the insured from making proof of disability. This is true in view of the fact that the company had known of the disability for several months. Therefore Hair became invested with the full right to recover the total amount of insurance under the permanent-disability benefit, whether he chose to assert it or not. *Travelers Ins. Co.* v. *Lancaster*, 51 *Ga. App.* 390 (180 S. E. 641). This right continued in him until his death, nothing having been done in the meantime to terminate it. Neither in the group policy nor in the certificate is there any contract limitation of the time within which suit may be brought thereon. Nor is there any limit of time within which proof of disability must be furnished. Generally the law would require it to be furnished within a reasonable time. But it need not be furnished at all when the insurer denies liability before the expiration of a reasonable time, as in this case. *Harp* v. *Fireman's Fund Ins. Co.*, 130 *Ga.* 726 (4) (61 S. E. 704, 14 Ann. Cas. 299). It follows that the certificate was still in force when Hair died. It had been kept

alive by the fact of his disability and the waiver by the insurance company of formal proof thereof. The cancellation of the group policy could not destroy his contract or any part thereof. See *Travelers Insurance Co.* v. *Sanders,* 47 *Ga. App.* 327 (4) (170 S. E. 387). The contract survived as a whole, and on his death could be enforced by his beneficiaries.

There is nothing in *Liner* v. *Travelers Ins. Co.,* 50 *Ga. App.* 643 (180 S. E. 383), which is inconsistent with the ruling in the present case. On the contrary, it was held in the *Liner* case that an agreement between employer and insurer, making a change in the group policy as to the manner of paying the insurance, could have no effect on the rights of a certificate-holder who had become totally disabled previously to the alteration in the group policy. It follows that a cancellation of the group policy would be equally ineffective against such a certificate holder. The action in the *Liner* case was brought to recover the disability benefit. In the present case it was to recover the death benefit. In *Johnson* v. *Travelers Ins. Co.,* 51 *Ga. App.* 243 (180 S. E. 387), the certificate of insurance was canceled on notice from the employer to the insurer as provided in the group policy. The cancellation was made on February 27, 1931, and no notice of disability was given to the defendant until April 27, 1933. The *Johnson* case did not involve the cancellation of the group policy, and therefore it is not inconsistent with the *Liner* case, supra. In the present case Hair's certificate was never canceled. The company undertook to cancel the group policy, and not the certificate. There are other differences in the facts between the *Johnson* case and this one, which need not be detailed.

The question whether the insured had to continue paying premiums in order to keep the policy alive should be mentioned. The petition alleges continuous payment until the insurer refused to receive further premiums. It may be noted, however, that the group policy provided that if the employee should furnish the insurance company with due proof of permanent total disability, the company would waive further payment of premiums. The inference is that until the proof was furnished the liability for premiums would continue. Consequently Hair was simply living up to the strict letter of the policy as long as he refrained from giving proof of disability. The nature of the contract could not

be altered by the acts of the insurer after liability had arisen. In its origin and essence, the contract allowed the insured to elect between two benefits, and his omitting to claim the disability benefit, under the facts alleged, must be construed as an election between benefits which was open to him under the contract. The petition set out a cause of action, and the court erred in sustaining the demurrer.

*Judgment reversed. Sutton, J., concurs. Jenkins, P. J., concurs in the judgment.*