### TURPENTINE & ROSIN FACTORS, Inc., v. TRAVELERS INS. CO.

Civil Action No. 2.

District Court, S. D. Georgia, Waycross Division.

May 8, 1942.

311

Blalock & Blalock, by J. D. Blalock, all of Waycross, Ga., for plaintiff.

Wilson, Bennett & Pedrick, by L. E. Pedrick, all of Waycross, Ga., for defendant.

LOVETT, District Judge.

The questions for decision in this case arise under a motion filed by defendant for summary judgment and for judgment on the pleadings pursuant to Rules 56 and 12(c) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The suit grows out of a life insurance contract containing benefits for permanent and total disability. It is a group policy. The insured persons are employees and customers of a naval stores factor.

Before considering the motion, I am constrained to comment on the size of the record. In essence, the suit is a simple one at law. The original petition consists of 57 pages of typewritten matter, containing 37 paragraphs and 23 exhibits. The case originated in the state court and was removed before amendment. Two amendments have been filed. The first contains 59 pages, with 23 new paragraphs and 24 exhibits, many of which are duplications of the exhibits attached to the original petition. The second amendment adds 9 new paragraphs and is 11 pages long. It has been necessary therefore to read, study and attempt to digest 127 pages of pleadings, which, in passing, it should be noted contain much more than a short and plain statement of the claim for relief contemplated by the new Federal Rules of Civil Procedure. See Rules 8(a) and 81(c). The briefs of counsel contain 162 pages. If this opinion seems long, in part at least it is provoked by the prolixity of counsel.

The allegations of the petition as originally drafted will be first considered.

The defendant issued a policy of group life insurance, which ordinarily insures the employees of an employer as a group, to Baldwin-Lewis-Pace Company and its affiliate, the Pace-Lewis Company, Florida corporations, to become effective on October 30, 1930, and to continue of force for a term of one year, reciting that it might be renewed from year to year. These companies were naval stores factors. Dennis F. Britt was a naval stores producer or operator, in Georgia, financed by these companies. Technically he was not an "employee"; he was a debtor and a holder of equities in certain naval stores producing property and naval stores products, the legal title to which was held by his factors as security for his debt, the debtor remaining in possession. The business was operated under the name of D. F. Britt & Son, a partnership, composed of Dennis F. Britt and Ethel L. Britt, a widow of a son of Dennis F. Britt.

The contract of insurance provided for payments upon death or upon permanent and total disability, as provided in the policy, of "operators", divided into certain classes. The class into which Dennis F. Britt fell gave insurance in the amount of $10,000. The "operators" correspond to the employees in the conventional policy of this nature; the "factors" to the employer.

The master policy of insurance is attached to the petition as an exhibit. Its obligations should be examined. It begins by saying that the defendant agrees to pay at the home

office of the company in Hartford, Connecticut, certain death and permanent total disability benefits, in the one case upon due proofs of the death of any employee of Baldwin-Lewis-Pace Company and/or its affiliate company, Pace-Lewis Company (thereinafter called the employer), insured under the plan of insurance specified in the application for the policy, "in accordance with the provisions hereinafter contained, provided such death shall occur during the term of this policy or any renewal thereof", and, in the other case, the amount determined by the plan as permanent total disability benefit, when and as any such employee shall become entitled thereto in accordance with the paragraph entitled "Permanent Total Disability Benefit".

The application is also attached to the petition, states the plan of insurance, and, as heretofore stated, classified Dennis F. Britt as an "operator" entitled to insurance in the amount of $10,000.

The paragraph of the policy entitled "Permanent Total Disability Benefit" reads as follows: "Permanent Total Disability Benefit:—If any employee shall furnish the Company with due proof that while insured under this policy and before having attained the age of sixty, he has become wholly disabled by bodily injuries or disease, and will be permanently, continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit, the Company will waive further payment of premium as to such Employee and pay in full settlement of all obligations to him under this policy the amount of insurance in force hereunder upon his life at the time of the receipt of due proofs of such disability, in a fixed number of installments chosen by the Employer from the table in the paragraph entitled 'Modes of Settlement', the first installment to be paid immediately upon receipt of due proofs of such disability. Any installments remaining unpaid at the death of the Employee shall be payable as they become due to the beneficiary designated by such Employee. Such remaining installments may be computed into one sum on the basis of interest at the rate of three and one-half per cent. per annum". Further recitals in the policy are to the effect that the insurance ends when the employment of any insured person ends or the employee notifies the employer to make no further deductions from his pay for the payment of premiums, except "in a case where at the time of such termination the employee shall be wholly disabled and prevented by bodily injury or disease from engaging in any occupation or employment for wage or profit. In such case the insurance will remain in force as to such employee during the continuance of such disability for the period of three months from the date upon which the employee ceased to work and thereafter during the continuance of such disability and while this policy shall remain in force until the employer shall notify the company to terminate the insurance as to such employee. Nothing in this paragraph contained shall limit or extend the Permanent Total Disability Benefit to which an employee shall become entitled under this policy".

There was a conversion privilege in the policy under the terms of which any employee (operator) referred to under the group policy, upon termination of employment for any reason, should be entitled to have issued to him without further evidence of insurability, and upon application made to the company within 31 days after such termination and upon payment of the premium applicable to the class of risks to which he belongs and to the form and amount of the policy at his then attained age, a policy of life insurance in any one of the forms customarily issued by the company, except term insurance, with permanent total disability benefit equivalent to that provided under the group life policy, in an amount equal to the amount of the employee's protection under the group policy at the time of the termination of his employment.

By the terms of the policy the employer was required to furnish the company monthly with the names of all employees eligible for insurance, together with the names of the beneficiaries, and also such data as might be necessary to determine the amount of insurance and the premium, and the employer was likewise required to furnish the company with the names of employees whose insurance should be terminated with the date of the termination of the insurance.

The clause relating to the change of beneficiary reads as follows: "Change of Beneficiary:—Any employee insured hereunder may designate a new beneficiary at any time by filing with the Employer a written request for such change on forms furnished by the Company, but such change shall become effective only upon receipt of such request at the Home Office of the Company".

The paragraph relating to the renewal of the policy is in this language: "Renewal Privilege:—This policy may be renewed from year to year at premiums to be computed by the Company in accordance with the paragraph entitled 'Premium Computation and Adjustment' and payable in the same manner as the premium for the first year. The schedule of rates hereinafter contained shall be used in such computation of renewal premiums for the number of years designated in the application of the Employer. Thereafter the renewal premiums shall be computed upon the basis of the schedule of rates then determined by the Company upon the basis of its experience".

After stating the facts already mentioned, the declaration recites that the premiums on the insurance assigned by Dennis F. Britt were paid by the factors to October 30, 1932; that during the years 1931 and 1932 the operator owed his factors an amount in excess of $12,000 at all times, owed them exceeding $10,000 when the insurance contract was made, and upon the filing of the suit owed them (or their assignees) more than $15,000.

The plaintiff, Turpentine & Rosin Factors, was also a Florida corporation created by the factors and others, and, under a trust agreement set out in the pleadings, became their trustee for the liquidation of their properties. As such trustee it held title to all the assets of the two factors, including an assignment, dated December 6, 1930, by Dennis F. Britt to the two factors of his certificate under the policy of group life insurance. This assignment conveyed all of the assignor's "right, title, interest and benefit in and to" his insurance, and provides "any claim hereunder shall be subject to proof by assignee of interest and extent thereof".

In the latter part of the year 1931 the relations between Mr. Britt, the operator, and the Lewis companies, his factors, became somewhat strained. Bad feeling existed. In the operation of the naval stores producing business there was lack of cooperation by Mr. Britt, finally resulting in the appointment of a receiver for the properties of D. F. Britt & Son in January, 1932, on the application of the factor-creditor. Mr. Britt lived in a small town near the operation of the partnership business. He cooperated with the receiver no more than he had previously cooperated with his factor. Indeed his health had become so bad as the result of a stroke of paralysis that, in the language of the pleader, his mental faculties were impaired, his mind affected to an extent that "caused him not to wish the insurance paid on his debts", though he concealed his mental condition from his factors at the time and from the plaintiff. He was then 57 years of age. The effect upon his mind is described with some detail and quite graphically in the petition. His condition might well be characterized as emotional insanity from time to time. The pleader alleges that when he got in this condition neither he nor his family knew of the provisions of the insurance contract between the defendant and the naval stores factors.

On January 29, 1932, a son of Dennis F. Britt addressed the first communication relating to this insurance to the defendant. In his letter he stated who he was and said that the factor "is trying to put my father out of business." He also said his father wanted to keep the policy of insurance and desired to change the beneficiary from the Lewis companies and "keep up the premiums on the policy himself". He inquired if it would be possible to change the beneficiary to some of his father's children, and asked if this were possible that forms for that purpose be sent to him and he would hand them to his father. The defendant replied promptly and stated that it would correspond with the factor on the subject, from whom the father would hear further at an early date. By the same mail the defendant wrote the factor in Jacksonville, Florida, enclosing forms for change of beneficiary and stated the request had been made by the son of Dennis F. Britt. On March 9, 1932 the factor by letter informed the defendant "we do not care to make this change (of beneficiary) at this time". The defendant then wrote the son that all changes of the insurance should be made through the office of the holder of the master policy and referred him to the factors. Thenceforward, the correspondence with the defendant was protracted and voluminous, sometimes the letters being written by the son, at other times by the father, and at still other times by lawyers engaged either by the father or the son for the purpose.

It is alleged in the petition that Mr. Britt and his family did not know all the provisions of the insurance contract, but they made bona fide efforts to have it transferred, or the beneficiary changed, in

such a manner that notwithstanding the naval stores factor held an assignment as security for a debt—and, in my opinion, therefore, had some very real rights in the insurance contract—the son might become the beneficiary. The conduct of the defendant by this correspondence is described in the pleadings as evasive and in bad faith, and it is claimed that it delayed giving information to those making the inquiry; and finally, it is stated, contended that the insurance was no longer in force. On July 22, 1932 the defendant wrote the son "We have now been advised that the insurance * * * . * is canceled and should have been canceled as of the date these two individuals (Dennis F. Britt and Ethel L. Britt) ceased working for the Turpentine & Rosin Factors, Inc. I will secure that information today and forward to our Home Office but at any rate the insurance has been canceled".

A rider dated October 20, 1932, was attached to the master policy, signed by the insurance company and the two factors (Baldwin-Lewis-Pace Company and Pace-Lewis Company), agreeing that the group life policy "be and the same hereby is canceled and all insurance thereunder terminated effective 12:01 A. M. standard time at Jacksonville, Florida, October 30, 1932".

On June 11, 1932, the son wrote the defendant that his father was "not doing business" with the factors and that he no longer "had an account with them". In that letter he stated his father wanted the policy transferred, and then added his father "wishes that you cancel the policy if you can not change it to one or some of his children". It was in reply to this letter that the defendant wrote the son that the certificate was canceled and should have been canceled as of the date the father and sister-in-law (the insured persons) ceased working for the factors. On August 20, 1932, Dennis F. Britt himself wrote the defendant that he had been adjudged a bankrupt, and said his physical condition was such he could not continue "with my insurance in keeping up the premiums". His letter explained that he had suffered two light strokes of paralysis, had lost the use of his left arm and left hand, and requested that the certificate of insurance be transferred to his son, who, he said, would continue to pay the premiums. He also stated in this letter that Turpentine & Rosin Factors, Inc., had mailed to the defendant premiums on the certificate for the months of August, September and October, 1932, but contended that he was no longer connected in any manner with either Turpentine & Rosin Factors, Inc., or Baldwin-Lewis-Pace Company, and that inasmuch as he understood under the master policy he had the right to change the beneficiary to any one he might name he wanted it transferred to his son. On September 8, 1932, the son wrote also asking for an explanation as to the payment of premiums by Turpentine & Rosin Factors, Inc., if the policy was canceled, saying in this letter, "I see no reason why they are not canceled as neither of these parties (referring to his father and sister-in-law, the insured) are working for Turpentine & Rosin Factors, Inc." The defendant replied on September 10th, requesting that the son take the matter up with the factors, concluding the letter with these words, "Our records indicate that the insurance policies referred to have been canceled".

It is alleged in the original petition that at the time a receiver was appointed for the business of D. F. Britt & Son, the latter part of January or early in February, 1932, Dennis F. Britt was permanently and totally disabled within the meaning of those words in the policy. It is also alleged that he suffered a second stroke of paralysis some time prior to August 20, 1932, that he died in the year 1936, and again the pleader sets out in some considerable detail the nature of the mental disturbances of Dennis F. Britt during the year 1932.

The petition asserts that the conduct of the defendant amounted to a waiver of any proofs of disability, its conduct created an estoppel against it now contending that proofs had not been filed as required by the policy, and it is also alleged that the refusal to recognize the insurance as of force in the summer months of 1932 relieved either the insured or the holder of the master policy from filing any proofs of disability. It is then alleged that the letter of August 20, 1932, heretofore mentioned, written by Dennis F. Britt to the home office of the defendant insurance company, was sufficient to constitute due proofs of permanent and total disability. That letter is set out in the margin.[1]

---

[1] "This letter is to advise you that I was on the 10th day of this month August 1932, duly and legally adjudged bankrupt by the Honorable J. S. Adams,

Further allegations of the petition are that plaintiff elected on July 2, 1938, to have the face of the policy paid in two annual installments under certain options granted by the policy; that suit is for the face amount of the policy with interest from July 22, 1932, the date of the alleged disability, and for statutory damages and attorneys' fees because of the bad faith of the defendant.

So far as the original petition unamended is concerned, it is clear the plaintiff there seeks to recover only for the benefits payable when the employee-operator became permanently and totally disabled within the meaning of those words as defined in the policy.

The first amendment adds as exhibits certain letters exchanged by members of the family of the operator and the defendant, which the pleader alleges were not available to the plaintiff at the time the original petition was filed but had been supplied to the plaintiff "through the courtesy of the defendant" since the case has been pending. This amendment admits that the refusal of the defendant to change the beneficiary of the insurance certificate was proper, but at the same time it is urged that because the operator and his family were ignorant as to the terms of the master policy the defendant was under a duty to advise them of the conversion privileges granted by it. Its failure to do so is denominated "evasive and deceptive" conduct. The amendment emphasizes again the retention of premiums by the defendant after knowledge of the physical disability of the operator and again asserts that this fact estops it from contending the insurance had been canceled. The amendment also complains of the statement by the defendant that the insurance terminated when employment terminated, notwithstanding the policy says practically the same thing, with the one exception which has been noted. The statement of the defendant in this respect the amendment says amounted to a waiver of any proof of disability. There are further allegations to the effect that the factors, holders of the master policy, and their liquidating agent, the present plaintiff, knew in July and August 1932 that the defendant contended the insurance was canceled, as they were so advised; but it is said that the operator did not know of the cancellation by agreement of the parties on October 30, 1932, until he was so advised in February, 1935, and that he never consented to the cancellation. Comment is also made upon the fact alleged that neither the receiver in the equity proceeding nor the trustee in bankruptcy of the operator were ever notified of the cancellation of the insurance.

---

Referee of the Southern District of Georgia, Dublin Division.

"Account of my physical condition being such that I will not be able to continue with my insurance in keeping up the premiums on my certificate No. 44 issued under your group policy #G-6712.

"I have lost my health entirely, and up to this date I have had two light strokes of paralysis in the left side of my body, in the meantime I have lost the use of my left arm and hand, and as I am now near 57 years old, I feel almost sure after realizing my physical condition that I will never be able to have an income sufficient to keep up the premiums, and for this reason this letter will be your authority to transfer and assign my insurance certificate #44, issued under your group policy #G6712, to my son Charles Robert Britt of Nahunta, Ga. who will keep up all further premiums necessary to keep this insurance in force, providing your company will change the beneficiary to him in this policy, or to the policy which this group policy may be converted into, as provided by said master policy G-6712.

"The premiums on my certificate #44 has been mailed to your company by Turpentine & Rosin Factors, Inc. of Jacksonville, Fla. covering quarterly premiums for the months of Aug. Sept. and Oct, 1932, in the amount of $64.00.

"This letter is also to advise you that I am no longer connected with the Baldwin-Lewis-Pace, or the Turpentine Rosin Factors, Inc., and as I understand my insurance under your master policy, I have right to convert and change the beneficiary to any one I might name.

"My not have a copy of my certificate of the master policy, I do not know what it provides, any way I feel that your company will look out for my interest, and give me all the benefits which this policy provides for. I feel sure that you have heard from my son Charles R. Britt of Nahunta by this time in connection with this insurance. Thanking you I am.

"Yours Truly,

"Dennis F. Britt.

"Cy—Chas. R. Britt, Nahunta, Ga."

Certain new facts are also introduced by the amendment as to a group policy of life insurance, similar to that in controversy, issued by the John Hancock Mutual Life Insurance Company to the factors under which the operator was insured, after the cancellation of the insurance contract with the defendant. The certificates issued under this new contract were not transferable, but a new certificate with the John Hancock company was issued to the operator. The plaintiff did not know that the operator then was permanently disabled and by accepting new insurance, the averment is, did not intend to relinquish any existing claim against the defendant which had already matured because of his disability. Dennis F. Britt sued the John Hancock company for permanent and total disability under the new certificate, and died pending the litigation. His personal representative was made a party and the case was compromised before verdict, the John Hancock company paying $1,000 as in full settlement.

The amendment repeats the allegation in the original petition that the suit is for disability benefits which matured on July 22, 1932, and then adds that the plaintiff had the option on that date either to claim the disability benefits or to await the maturity of the death benefits. The allegation proceeds "if for any reason it (the plaintiff) is not entitled to recover for the total and permanent disability" of the operator with interest from July 22, 1932, on which date it is claimed the defendant repudiated the contract, then the suit should be allowed to proceed for the death benefits in the same amount with interest from the date of the operator's death, because he had been denied the privilege of conversion granted by the master policy, through the unlawful conduct of the defendant. Alternatively, it is also said in the amendment that the plaintiff should be allowed to recover under the original policy for the death benefit with interest from the date of the operator's death, in 1936; that because of the alleged unlawful conduct of the defendant in repudiating the contract the operator and the plaintiff were damaged in the sum of $10,000, inasmuch as his physical condition at the time of the alleged repudiation was such that he could obtain no insurance with another life insurance company.

The amendment sets out further that the legal representative of the operator, presumably his administrator, has an interest in the litigation, though not a party of record; that as such legal representative he is entitled to an accounting with the plaintiff as trustee in the application of the credits to the account of the operator if and when there is a recovery and payment in this case.

Attention is also called to the letter of March 9, 1932, from the factor to the defendant, already mentioned, in which the factor stated it did not care to have the beneficiary under the operator's certificate of insurance transferred at that time.

The second amendment adds certain new paragraphs to the petition as amended. Those paragraphs allege that the operator contested the proceedings in equity for a receiver of his business, engaged named counsel for that purpose (not counsel now appearing for plaintiff), and was successful in defeating some of the liens asserted by the factor; though the allegation in the original petition that the receivership resulted in a final sale of the property is not withdrawn.

This amendment says that neither the operator nor his counsel at that time knew of the policy provisions for permanent and total disability, that such disability would extend the policy, that "operators" were insured and that Dennis F. Britt was included in the schedule as one of those covered by the insurance, and that the relationship of factor and operator—and not actual performance of work—was the test of eligibility and coverage under the policy. The amendment alleges that the operator and his counsel at that time relied entirely on what the defendant said as to these several matters. The operator's counsel told him that his insurance was no longer of force, and was misled by the defendant in making this erroneous statement.

This amendment repeats the several differing theories, and alternative claims, for relief, relied upon by the plaintiff.

Stripped of superfluous conclusions, interpretations and arguments, the complaint as finally amended reveals the following facts.

A naval stores producer, holding life and disability insurance under a group policy issued to his factor, has disagreements with that factor. He owes the factor a considerable debt, secured by the title of his naval stores properties. Re-

ceivership proceedings are instituted against him by the factor, a receiver is appointed, and the properties held as security are finally sold under an order of the court. About the time these proceedings for receivership were filed the producer, herein and in the certificate of insurance called "operator", suffers a stroke of paralysis that impairs his mind and body to such an extent that he becomes permanently and totally disabled. This disability began at some time not precisely stated prior to July 22, 1932. Being at "sixes and sevens" with the factor, the operator's son first, and later the operator himself, attempts to change the beneficiary of his insurance from his "estate" to some member of his family, notwithstanding he had previously assigned all of his interest in the insurance to his factor as further security for his debt. When the request was made of the insurer, quite properly and very promptly it communicated with the factor, which held the master policy, and sent forms for making the change to be filled out and returned. The factor declined to permit the proposed change. The operator is then informed he should take the matter up further with the factor. Being advised by the son of the operator on June 11, 1932, that his father was no longer doing business with the factors and had no account with them, and that his father "wishes the policy canceled if you can not change it to one or some of his children", the insurer writes the son on July 22, 1932, that the policy had been canceled and should have been canceled as of the date the father "ceased working" for the factor. This letter is relied upon by plaintiff as a repudiation by the insurer of the contract of insurance. Correspondence continues but the insurer stands firm in its insistence the policy (certificate) is "canceled". A better word perhaps would be "terminated". In October, 1932, by agreement of the factors and the insurer the master policy was canceled. The operator dies in 1936, the exact date not being alleged.

The suit is brought not by the personal representative of the deceased operator, but by the liquidating agent or trustee of the very factors who declined to permit a change of the beneficiary, and who held the master policy of insurance and knew its requirements. The insurance contract granted certain conversion privileges, which the insured never exercised. The insurance of an employee (operator) ended when his employment ended, except in a case where at such termination the employee was totally and permanently disabled. In that case, the life insurance remained in force during the continuance of the disability while the policy remained of force. There were disability payments also provided for in the policy. Upon furnishing due proofs of such disability as the contract defines, the insurer waived further payment of the premiums. Disability benefits, in the amount of insurance in force upon the life of the insured, were payable in such installments as the employer (factor) fixed.

The due proof of disability relied upon consists of a letter from the operator to the insurer dated August 20, 1938, already quoted. The installment payments of disability benefits were not fixed by the factor, as required by the policy, until July 2, 1938. The suit was filed on July 13, 1938.

Is this a case where a claim for relief is stated? I do not think so.

■ Under the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290, New York Life Ins. Co. v. Jackson, 304 U.S. 261, 58 S.Ct. 871, 82 L.Ed. 1329, Rosenthal v. New York Life Ins. Co., 304 U.S. 263, 58 S.Ct. 874, 82 L.Ed. 1330, I must endeavor to find and apply the substantive law of Georgia, as jurisdiction here rests only on diversity of citizenship of the parties. See Klaxon Co. v. Stentor Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Pink, Supt. v. A. A. A. Highway Express, 191 Ga. 502(4), 510–514, 13 S.E. 2d 337, 137 A.L.R. 934, certiorari granted, 313 U.S. 555, 61 S.Ct. 1096, 85 L.Ed. 1517, affirmed 314 U.S. 201, 62 S.Ct. 241, 86 L.Ed. ——, 137 A.L.R. 957.

The defendant insurance company is domiciled at Hartford, Connecticut, the plaintiff and its immediate assignors at Jacksonville, Florida, and the insured operator is a citizen of Georgia residing in this district. The policy is silent as to the laws of the state that shall govern in its construction. Where the master policy or the certificate of insurance was delivered does not appear. The plaintiff invokes certain statutes of Georgia as to damages and attorney's fees, Georgia Code (1933), Sec. 56-706, which would not be applicable if the laws of some other state should be applied. Coffin v. London &

Edinburgh Ins. Co., D.C., 27 F.2d 616(7); Fidelity-Phenix Fire Ins. Co. v. Cortez Cigar Co., 5 Cir., 92 F.2d 882(4).

The motions for summary judgment and for judgment on the pleadings are on two grounds, the first being that any right of action is barred by the statute of limitations in Georgia, and the second, that no claim for relief is stated.

■ If we accept the plaintiff's theory that on July 22, 1932, the defendant repudiated the contract and the cause of action arose at that time, and concede for this discussion that a claim for relief is otherwise stated, the action on the policy of certificate of insurance is not barred. The suit was filed in the state court on July 13, 1938. The Georgia statute requires all actions on simple contracts in writing to be brought within six years after the claim becomes due and payable. Georgia Code (1933), Sec. 3-705. The plaintiff is saved by nine days. Norman v. Sovereign Camp W. O. W., 61 Ga.App., 457(2), 460, 6 S.E.2d 157.

■ A different conclusion is compelled as to the other causes of action that do not seek enforcement of the insurance contract, but are asserted independently of it. Of such are those for damages arising from the alleged failure of the defendant to fully inform the operator as to his rights to convert his policy when his relations with the factor terminated, the giving of alleged false information concerning the cancellation or termination of the insurance, and from conduct characterized as evasive and deceptive that prevented the operator from filing proofs of disability and the plaintiff from filing proofs of death.

Putting to one side for the moment that this is not a suit by the operator or the personal representative of his estate, but is filed by the agent of the very factors who knew all of the facts touching the insurance contract and its requirements as to proof, and laying aside also all questions of duty to exercise reasonable diligence to discover the true facts, these other causes of action are in the nature of an action for deceit, or fraud, or misrepresentation, sounding in tort. Whether looked upon as an injury to his property or to his person the action is barred, in the one case after four years from the time it accrues, and in the other after two years. Georgia Code (1933), Secs. 3-1002, 3-1004. The Supreme Court of Georgia has held that an action to recover damages sustained by a plaintiff in consequence of fraudulent representations and concealment made by the defendant is governed by the statute of limitations appertaining to injuries to property. Frost v. Arnaud, 144 Ga. 26, 85 S.E. 1028. See also Life & Casualty Ins. Co. v. Walker, 62 Ga.App. 819, 822, 10 S.E.2d 124.

So, we come finally to the causes of action alleged that are founded on the contract. What are they? The original complaint seeks recovery of the benefits alleged to be payable where the insured becomes totally and permanently disabled; the amendment asks judgment because the insured has died.

■ The disability benefits were not made payable in any and all events. They became payable only when the insured "shall furnish the Company with due proof that while insured * * * he has become wholly disabled by bodily injury or disease, and will be permanently, continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit". The controversy between the parties at this point revolves around whether the letter quoted in the margin, from the operator to the defendant, constituted such proof of disability, and, if not, whether the defendant waived such proof or estopped itself from contending that proof of disability must be furnished. The letter seems wholly insufficient as proof of disability. The primary purpose of the letter as shown by the context was to obtain a change of beneficiary. Incidentally, the defendant was informed (a) the operator had been adjudged a bankrupt, (b) that his health was bad, (c) as a result of these things he could not continue to pay the premiums on the insurance, (d) if his son was made beneficiary, he would, and (e) he was no longer connected with the factor in any business way. Nowhere does he state that he is either permanently or totally disabled, unless the statement that he had "lost his health entirely" may be construed as an equivalent. That statement is qualified by the next expression, "I feel almost sure, after realizing my physical condition that I will never be able to have an income sufficient to keep up the premiums". The letter contains no demand for payment of disability benefits, requests no forms for making proofs.

■ While under a policy of insurance requiring, but not defining or detailing,

the manner or nature of "due" proof of claim thereunder it is not necessary that the proof be in affidavit form (Metropolitan Life Ins. Co. v. Lovett, 50 Ga. App. 763, 766, 179 S.E. 253), or that it satisfy the insurer of the existence of disability (Life Insurance Co. of Virginia v. Williams, 48 Ga.App. 10, 172 S.E. 101), it is necessary that reasonable proof be given of those matters specified or implied in the policy. Prudential Ins. Co. v. Richardson, 52 Ga.App. 807, 808(2), 813, 184 S.E. 809; Cordell v. Metropolitan Life Ins. Co., 54 Ga.App. 178(2), 187 S.E. 292; Metropolitan Life Ins. Co. v. Daniel, 64 Ga.App. 620, 624(3), 13 S.E.2d 741. See also 14 R.C.L., Sec. 507; 33 C-J, Sec. 664, p. 16; O'Reilly v. Guardian Mut. Life Ins. Co., 60 N.Y. 169, 19 Am.Rep. 151; Black v. Jefferson Standard Life Ins. Co., 171 S.C. 123, 171 S.E. 617; McAndrews v. Prudential Ins. Co., 132 Neb. 332, 271 N.W. 857, 109 A.L.R. 821, and annotations on page 828. The letter relied upon in this case fails entirely to meet these requirements, and was, therefore, insufficient as due proof of total and permanent disability.

■ The plaintiff, recognizing the possibility, if not the probability, that sufficient proofs of disability had not been furnished, says none was necessary, as the defendant repudiated its contract by its letters and conduct. Prudential Ins. Co. v. Ferguson, 51 Ga.App. 341, 180 S.E. 503; Johnston v. Travelers Ins. Co., 55 Ga.App. 66, 189 S.E. 381; Royal Arcanum v. Lester, 56 Ga.App. 527, 530, 193 S.E. 259; Sovereign Camp, W. O. W. v. Cooper, 62 Ga.App. 390, 399, 8 S.E.2d 161, and similar Georgia cases, are strongly relied on by the plaintiff to support this view. These cases, as well as many others, hold that a denial of liability by an insurer and an absolute refusal, on demand, to pay, made within the time required by the policy for furnishing proofs of loss, amount to a waiver of such proof. Such demand and refusal to pay constitute disaffirmance or repudiation of the contract, relieve the insured person from doing the vain thing of filing proof of his claim, and entitle him to sue at once to enforce his contract and recover for the loss sustained. A sine qua non, however, of the rule invoked under the Georgia law seems to be that the insurer have notice that a claim of loss is being asserted. Phenix Ins. Co. v. Searles, 100 Ga. 97, 98(4), 27 S.E. 779; Thornton

v. Travelers' Ins. Co., 116 Ga. 121, 232, 42 S.E. 287, 94 Am.St.Rep. 99; Harp v. Fireman's Fund Ins. Co., 130 Ga. 726, 61 S.E. 704, 14 Ann.Cas. 299; National Life Ins. Co. v. Jackson, 18 Ga.App. 494, 89 S.E. 633; Newark Fire Ins. Co. v. Reese, 32 Ga.App. 42, 123 S.E. 41; Barkley v. American National Ins. Co., 36 Ga.App. 447, 136 S.E. 803; People's Loan & Savings Co. v. Fidelity & Casualty Co., 39 Ga.App, 337, 338(3), 147 S.E. 171; Cordell v. Metropolitan Life Ins. Co., supra; Schneider v. Metropolitan Life Ins. Co., 62 Ga.App. 148(4), 154, 7 S.E.2d 772. Here the insurer had no such notice. Indeed, at the time the insurer said the policy was "canceled" (a more accurate expression would have been that the coverage of the operator had "terminated") the whole discussion related to a proposed change of beneficiary—a change which the plaintiff now admits properly could not have been made over the objection of the assignee of the insured, who also held the master policy. See Sprouse v. Skinner, 155 Ga. 119, 116 S.E. 606; Hulsey v. Cotton States Fert. Co., 5 Cir., 45 F.2d 388.

In Prudential Ins. Co. v. Ferguson, supra, strongly relied on by the plaintiff, the insurance company did not wait for the end of the term to cancel the policy, as here; the cancellation was wrongful, and the suit was for damages—not for benefits—for the unlawful breach of the contract. Johnston v. Travelers Ins. Co. was a case where the personal representatives of the deceased employee sued. The facts in some respects are similar to the case under consideration. The distinguishing features are in the relationship of the plaintiffs to the insurer and the fact that the insurer must have known, the court held, that the employment of the insured had terminated when he became disabled because the premiums were thereafter paid by the employee and his relatives and accepted by the company. The agent of the insurer also advised the plaintiff that nothing else was necessary to continue the insurance of force during the disability of insured; and later, on instructions, refused to accept further premiums. In response to a request to furnish necessary blanks to present the claim arising from the death of the insured, the defendant denied all liability under the policy. Meanwhile, after the disability arose and with knowledge of it, the insurer attempted to cancel the

group policy by attaching a rider to it. The case is easily distinguished, in my opinion. The Royal Arcanum and Sovereign Camp, W. O. W. cases are quite dissimilar on their facts.

■ The liquidating agent of the factor comes into this court standing in no better position than the factor himself. The factor was the assignee of the insured and was also the holder of the master policy and of necessity knew and was bound by its terms. Under the laws of Georgia a contract of group insurance is one between the employer and the insurance company, and the right to cancel is in the employer. The insured is not entitled to notice of cancellation. It is not in the power of the insured before he assigns his insurance—and, a fortiori, not in his power afterwards—to keep the group policy in force or to cancel it. The policy in this case was canceled on an anniversary date by mutual consent of the contracting parties, which amounts to the same thing as though the employer allowed it to lapse for non-payment of the premiums. Though assumed by the plaintiff in argument and pleading that the appointment of a receiver for the pledged assets of the operator did not disturb the relationship with the factor—it is said he continued as much in the nature of an "employee" as before—no authority has been supplied to support this view, and even if the insurer was in error in thinking the employment then ended, and hence the insurance terminated, there is nothing to indicate any dishonest purpose in so contending. It may be that it did end the insurance. The insurance company acted only on the information given by the insured and his family. All of the allegations concerning the lack of knowledge of the insured as to the requirements of the master policy are quite immaterial when his assignee, who held the policy, becomes the plaintiff. The duty of due diligence required the insured to inform himself as to his contractual rights when he became disabled, and his failure to do so because he had a grievance against the factor ought not to prejudice the rights of the defendant. No fraud between the factor and the insurer is charged; indeed, could not well be when the factor is the person suing. I can find no bad faith, wrongful cancellation, deceptive conduct, repudiation of contract, or other improper or illegal conduct on the part of the defendant after rather extended study of the allegations of the amended complaint. The controlling Georgia cases sustaining the views I entertain are Travelers' Ins. Co. v. Conine, 37 Ga.App. 500, 140 S.E. 784; Johnson v. Travelers' Ins. Co., 51 Ga.App. 243, 180 S.E. 387; Curd v. Travelers' Ins. Co., 51 Ga.App. 306, 310, 180 S.E. 249; Johnson v. Metropolitan Life Ins. Co., 52 Ga.App. 759, 763(3), 184 S.E. 392; Cutledge v. Aetna Life Ins. Co., 53 Ga.App. 473, 186 S.E. 208; Lancaster v. Travelers Ins. Co., 54 Ga.App. 718, 720, 189 S.E. 79; all of which are referred to in Berry v. Travelers Ins. Co., 64 Ga.App. 727, 735–739, 14 S.E.2d 196. See also Northwestern Mut. Life Ins. Co. v. Dean, 43 Ga.App. 67, 157 S.E. 878; Dean v. Northwestern Mut. Life Ins. Co., 175 Ga. 321, 165 S.E. 235; Habel v. Travelers Ins. Co., 5 Cir., 117 F.2d 337.

■ The claim arising from the death of the insured is not enforceable for the simple and sufficient reason he did not die "during the term of said policy or any renewal thereof", or "while insured thereunder". The policy had been canceled by agreement before his death. By its express terms, the liability of the insurer did not extend beyond the lapse or proper cancellation of the master policy. And no proofs of death have ever been filed. See Berry case, supra.

The most recent expression on the questions of law from the appellate courts of Georgia is the Berry case, decided by the Court of Appeals of Georgia April 3, 1941. It rules this case. The facts are quite like this case in many respects, and in some the plaintiff stood on better ground. The plaintiff was the beneficiary. She sued insurance company and the employer, the holder of the master policy, and alleged that they wrongfully and maliciously attempted to cancel the policy for the purpose of preventing payment, knowing that the insured employee had become totally and permanently disabled while his certificate of insurance was of force. Ignorance of insured and beneficiary as to the terms of the master policy was pleaded. It was charged that all premiums had been paid up to the date of the employee's death. The policy provisions are quite like those we are now considering. The defendant insurance company is the same company here being sued. General demurrers were sustained, and the judgment was affirmed. The argument was made that disability suspended payment of premiums, and author-

ized the employee to continue the insurance in force as a policy insuring his life only. The court said: "It can not · be said that any right to recovery had accrued merely because of the fact that the disability of the insured had already occurred before the cancellation of the group policy, because it is distinctly stipulated in both the group policy and the certificate that payment was to be made only in the event that the insurance was in force at the time of the death of the insured. If it be said that the provision is a harsh one, the answer is that the rights of the parties are to be determined under the contract as made, and it is not within the power of this court to rewrite it. * * * A proper construction of the petition as amended shows that the group policy was not in force at the time of the death of the insured, and under the plain and express terms of the group policy and the certificate recovery can not be had, notwithstanding the fact that the insured's disability arose before the cancellation of the group policy". 64 Ga.App. pages 736, 739, 14 S.E.2d page 201.

Counsel for defendant may prepare and, after notice, present a judgment sustaining the motions filed in its behalf so far as consistent with this opinion.